# McINTIRE *v.* McINTIRE.

ERROR TO THE SUPREME COURT OF THE DISTRICT. OF COLUMBIA.

No. 142.   Argued March 13, 1896. — Decided April 13, 1896.

On the trial of this case in the Supreme Court of the District of Columbia, that court, after examination of the facts, held that: " (1) Where a will relates only to personalty, and is in the handwriting of the testator and signed by him, no other formality is required to render it valid " in the District; and that " (2) Immaterial alterations in a will, though made after the testator's death by one of the beneficiaries under it, will not invalidate it" in the courts of the District, " when not fraudulently made." This court, after passing upon the facts in detail, arrives at substantially the same conclusions touching them as did the Supreme Court of the District, and affirms its judgment.

THE facts and the case are stated in the opinion of the court.

*Mr. William G. Johnson* and *Mr. Calderon Carlisle* for plaintiff in error. *Mr. Jeremiah M. Wilson* was on their brief.

*Mr. Enoch Totten* for defendants in error.

MR. JUSTICE WHITE delivered the opinion of the court.

The question for our determination is whether the Supreme Court of the District of Columbia, at a general term thereof, erred in affirming the action of a special term of the court, sitting as a Circuit Court, in peremptorily instructing a jury to find certain issues in a will contest favorably to the defendants. The contest in question was begun by Charles McIntire in the probate branch of the court, for the purpose of annulling the probate of a certain alleged last will and testament of his elder brother, David McIntire. The original contestant having died intestate pending the action, he was succeeded, as a party plaintiff, by his son, his duly qualified administrator, who was also, in his individual capacity, a legatee under the probated will.

Issues were framed in the probate branch and certified to the Circuit Court to be determined by a jury. The opinion of the general term is reported in 19 Dist. Col. 482.

The following facts were established, and are necessary to be stated for a proper understanding of the case:

David McIntire resided in Washington from above 1866 until his death, at the age of seventy-two years, on April 1, 1884. He never married, and left an estate consisting of personal property exceeding fifty thousand dollars in value, and the following collateral kindred: Charles McIntire, a younger brother, and his son Charles McIntire, Jr.; Edwin A. McIntire, Martha McIntire, Elizabeth M. Test, Emma T. McIntire and Adaline McIntire, children of a predeceased elder brother Edwin T. McIntire; and also the following grandnieces and

grandnephews: Annie Laura McIntire, wife of William T. Galliher, Emma V., William E. and Henry N. McIntire, children of Henry McIntire, a deceased son of the testator's elder brother Edwin T. McIntire. For several years immediately prior to his death David McIntire lived at the home of William T. Galliher, husband of his grandniece Annie Laura.

Four or five hours after the death of David McIntire an examination was made by his nephew, Edwin A. McIntire, and by Mr. Galliher and his wife, and her sister Emma V. McIntire, of a chest which had belonged to decedent, and in a tin case therein were found two separate writings, which were read and examined by each one present. On April 8, 1884, these documents, pasted together, were proved, in the probate branch of the Supreme Court of the District, as the last will and testament of Mr. McIntire, by the joint affidavit of the four persons above named, who, as above stated, first inspected the writings after the death of the testator. The documents were admitted to probate on April 12, 1884, and letters of administration issued to E. A. McIntire. As probated, the writing read as follows:

"January 7th, 1880.

"This my last will and Testament. I David McIntire, Tin Plate Worker, of this city (of) Do will Bequeath or Devise to my Nephews and Nieces That is to say, From July the first 1st eighteen hundred and fifty-four (1854) To the opening of, or reading of this Paper, One thousand three hundred and fifty dollars and sixty-four cents (1350.64) is to be calculated at Six 6 per cent interest That amount whatever it may be is to be given to each of my Brother Edwin's children. The remainder if any, is to be equally divided Between my Brothers Edwin and Charles children.

"David McIntire. (Seal.)"

(Endorsed on back :)

"The Judges of the Courts, lay it down as a rule in law, that, what a person leaves in his, handwriting, with his name attached, is his, Will, and it is the law. The law, requires no

particular formality in action, or words to constitute a valid will or request.                    DAVID McINTIRE."

"January 1, 1880.

"At my death, or after i wish my body to be taken to Philadelphia, and deposited in the 'Macphelah Cemetery' Vault with the cover unscrued and remain in that condition until friends or relatives are satisfied, and then deposited in the lot with the other graves.    And providing 'Macphelah Cemetery' should be sold and a disposition of those made in the family lot, by the family, then the instruction as stated above is to follow that disposition.

"DAVID McINTYRE or TIRE."

"To provide for the demise when it should come, to the great proprietor of all.    My clothing is to go to those that they fit. If there is more than one, a rough estimate is to be made and divided so recipients may have a word and be satisfied nephews first, — I do not leave them as a legacy they must take them as their own.    To avoid trouble, i. e. not of any account whatever, To those that i appoint to settle see that those things are carried out.                    D. McINT."

"You must act understandingly there will be no money in bank.

"If the articles are worth having.    To give satisfaction to all interested.    Provided the surroundings should be disturbed. That is the names i have written down with the articles attached to them.    It is my intention that they take them as their own.                    DAVID McINTIRE."

"To Lizzy M'Intire Test as she is raising more boys.    Hence my Chest with all my clothing or wearing apparel, coat vest, pants, shirts, drawers, socks etc.    The large double shawl the vegtable studs goes with the shirts.    The sewing apparatus. The 5 glass stopper vials.

"To Emma V. the writing desk with all the writing apparatus pens ink, paper, envelopes, pencils.    The cotton mufler, red silk handkerchief and gold studs.

" To Chas. M'Intire Jr.   The telescope-gun and one pocket knife, Webster's Dictionary and Pocket-Book.

" The linen Pocket handkerchief to Normy

" The sachel & strap, Martha, addyline, Emma."

It will subserve clearness of statement to mention here that the sum specifically given, by the writing dated January 7, 1880, to the children of testator's brother Edwin equalled an indebtedness owing to the testator by his younger brother Charles.

In February, 1885, a suit was filed on the equity side of the Supreme Court of the District of Columbia, on behalf of Charles McIntire, Jr., and Mrs. Galliher and her sisters and brothers, all claiming as legatees under the probated will, seeking the appointment of a receiver to take possession of the estate in question until the appointment of a new administrator, it being alleged that Edwin A. McIntire had been guilty of fraudulent and deceptive practices, that his bond was insufficient, and that the estate was not safe in his hands.   An amicable settlement of this suit was had.

Shortly after the adjustment of this suit, on June 5, 1885, these contest proceedings, heretofore referred to as begun by Charles McIntire, were instituted in the probate branch.

The amended petition of Charles McIntire contained the following allegation with reference to the alleged invalidity of the will in question:

" Petitioner further says, upon information and belief, that the said paper-writing, bearing date January 7, 1880, was not executed by the said David McIntire, or, if so executed, that he was not at that time of sound mind nor conscious of the contents of the same, nor that he executed the same freely and voluntarily, nor that the same is his final and complete last will; and he is advised and believes that the said paper-writings purporting to be the last will and testament of the said David McIntire have been fraudulently altered by the said Edwin A. McIntire with the intent and effect thereby to cheat and defraud the next of kin of said decedent."

Answers were filed on behalf of Edwin A. McIntire, his

sisters, and their mother, (as assignee of her daughter Adaline, who died in July, 1885,) and the issues certified to the circuit court branch to be determined by a jury were as follows:

"1. Was the paper-writing, as now probated and now bearing date January 7, 1880, purporting to be the last will and testament of said David McIntire, deceased, executed by said David McIntire in due form as required by law?

"2. Was the said David McIntire at the time of the alleged execution of the said paper-writing, as now probated and now bearing date January 7, 1880, of sound and disposing mind and capable of making a valid deed or contract?

"3. Were the contents of the said paper-writing, as now probated and now bearing date January 7, 1880, read to or by the said David McIntire or otherwise made known to him at or before the execution thereof?

"4. Was the said paper-writing, as now probated and now bearing date January 7, 1880, executed by the said David McIntire under the undue influence or by the fraud of any person or persons?

"5. Is the said paper-writing, as now probated and now bearing date January 7, 1880, the complete and final last will and testament of the said David McIntire?

"6. Has the said paper-writing, purporting to be the last will and testament of the said David McIntire, deceased, probated on the 8th day of April, 1884, or any part thereof, been fraudulently altered since the death of the said David McIntire, and before the probate thereof, by any person or persons to the prejudice of any of the next of kin or heirs-at-law of said David McIntire?

"7. Has the said instrument purporting to be the last will and testament of said David McIntire, deceased, been in any respect altered since the death of said David McIntire, and, if any such alterations have been made, what were the said alterations and how were they made? Were such alterations made by any party interested under said will or with the privity of any party interested under said will?

"8. Has the said instrument purporting to be the last will and testament of said David McIntire, deceased, or any part thereof been revoked?"

Two trials of these issues were had. On the first the findings of the jury were set aside. On the second trial (June, 1889) the court instructed the jury to find all the issues favorably to the defendants, which was done, and the general term overruled a motion for a new trial.

With this preliminary statement, we come to the consideration of the question whether the trial court rightly instructed the jury to return a verdict in favor of the defendants. In the proceedings before the jury no attempt was made to establish that the testator had ever been of unsound mind, or that the execution of the testamentary writings in question were the result of the exercise upon him of any undue influence: hence the second and fourth issues were properly determined. So, also, the evidence all tended to show that the writings in question were the same documents which were found in the tin case belonging to the deceased, and that the contents were in his handwriting, except in so far as the questions of alteration or suppression are concerned, which we shall hereafter consider.

To the extent, therefore, of these facts the instructions given by the trial court were also undoubtedly correct.

The real controversy is, whether there was proof supporting the claim that material alterations had been made in the will after the death of the testator and before its probate, and also whether there was proof sustaining the charge that a material part thereof had been suppressed. The conflicting contentions of the parties on this subject are as follows: The contestant asserts that evidence was introduced tending to show that the will proper, when it was first taken by Edwin A. McIntire into his possession, was dated January 1, 1880, whereas as probated it reads January 7, 1880; that the date of the second paper or codicil had been altered from January 1, 1884, so as to read January 1, 1880; that the words "of the city of" in the will proper had been altered by Edwin A. McIntire, or by his procurement, so as to read "of this city;" that the second writing or codicil which disposed of the wearing apparel, was originally a full, double sheet of legal cap paper, but that one of the folds, that is, one fourth of a half

sheet, which had upon it matter written by the testator, had been torn off after it had been taken into E. A. McIntire's possession and before the writing was probated; that the proof showed that this was done with the connivance of the defendants. The defendants, on the other hand, assert that the clear preponderance of proof established that the will as probated was in the condition in which it was found after the death of the testator. Both parties, besides the direct evidence by them offered, introduced much indirect testimony to sustain their respective positions. Thus the contestant sought to corroborate his theory that the will had been materially altered by testimony going to show that subsequent to January 1, 1880, the testator had become unfriendly to the contestees who are named in the alleged writing, and had presumably altered the will which he had previously written in their favor. On the other hand, the defendants assert that their contention is fortified by evidence tending to show that prior and subsequent to the 1st of January, 1880, the testator was greatly incensed at his brother Charles because of the existence of a long outstanding indebtedness due him by Charles, which has been heretofore referred to, and therefore had reason not to make a will in his favor. In addition, the contestant, in order to sustain the alleged proof of material alterations and suppression, offered much evidence, which was excluded, which, it was claimed, if it had been admitted, would have tended to show that Edwin A. McIntire, with the approval of the other defendants, made false representations to the probate judge in procuring the grant of letters of administration and in fixing the amount of the bond to be by him given in that capacity; that deceptive practices were resorted to to prevent the testator's brother Charles, who resided in Pennsylvania, from seeking to qualify as administrator, and that untruthful and fraudulent statements were also made by E. A. McIntire to the legatee, Charles McIntire, Jr., to his attorneys and to others as to the amount of the estate and its assets, and also that E. A. McIntire concealed the possession of a large amount of assets and made a false inventory. It is manifest that the correctness of the ruling

of the lower court in instructing a verdict, as well as the question whether prejudicial error resulted from the action of the court in excluding the testimony as to McIntire's misconduct in relation to the inventory and his misrepresentations and fraudulent action as to other matters, (apart from the alleged alterations or suppression of the will,) must depend primarily on whether the direct testimony as to alterations and suppression left it uncertain whether such alterations or suppression were of a vital character. If there was not only no adequate proof to have supported a verdict resting on the fact that there had been material alterations and suppression, but, on the contrary, if there was a clear preponderance of proof the other way, it is obvious that it becomes immaterial for the purpose of ascertaining the validity of the will to determine whether or not, in other respects, McIntire was guilty of fraud and wrongdoing.

In examining the testimony for the purpose of ascertaining whether there is any proof of material alteration and suppression, the question to be determined is, whether there was any proof of such alteration or suppression as would have sustained an affirmative answer by the jury to the eighth issue. The mere fact that the proof may have established that after the death of the testator alterations were made which did not materially change the will, and which were not of such a nature as to justify the presumption that the testator had revoked the will, in whole or in part, would not have authorized a verdict, the result of which would have been to set aside the probate of the will.

We come now to determine whether there was evidence that there had been such material alterations or suppression as would have supported a verdict setting aside the will. The only witnesses testifying on this subject on behalf of the contestant were Mr. and Mrs. Galliher and Emma V. McIntire. Before examining the testimony of these three witnesses it must be borne in mind, as already stated, that they all three read the contents of the documents in question after the death of David McIntire, when they were first taken from the receptacle in which they were found. These witnesses were pecul-

iarly interested in the provisions of the writings, as they nat-
urally anticipated that the deceased would give, at least, a
portion of his estate to the children of his dead nephew, with
whom he had been for many years in direct contact under the
same roof. Seven days following this careful reading and
inspection of the papers, they stated under oath, in an affida-
vit, intended to be the basis for the admission of the writings
to probate, that "these papers were discovered in a tin case
in a chest late the property of the decedent; that they are
now and have been for years past well acquainted with the
handwriting of the deceased, and they believe the entire writ-
ing and signatures are in his handwriting." After the will
had been admitted to probate and the administrator appointed,
in February, 1885, in the petition filed in the equity suit, sup-
ported by the affidavits of these witnesses, they treated the
writings in question as a valid will of David McIntire, and
asserted rights under it. The testimony given by these wit-
nesses as to the alterations in the will is as follows:

Mrs. Galliher testified that she read over the papers when
they were found, and that the one dated January 1, 1880,
originally bore the date January 1, 1884, while the one now
dated January 7, 1880, originally read January 1, 1880, and
the latter paper had on it the words "of the city of," instead
of the words, as now, "of this city;" that the document was
written on a new, full length sheet of paper, one eighth of
which is now missing, and "looked as if it had been just written,
folded and put in the chest." The two papers were disjoined.
The next she saw of the papers, after Edwin A. McIntire re-
tained possession of them, was in the probate court, on April 8,
1884, when she deposed to their genuineness. She said she
then noticed the change in the date, and the alteration of the
words "of the city of," and called the attention of her uncle
(E. A. McIntire) thereto, who replied that he thought it better
to have them both one date, and that he altered the will to
read "of this city," "because otherwise he would have to
take it to Philadelphia to probate it, and he could not give
bond there." Mrs. Galliher further testified that she did not
think she noticed at that time that a part of the will had been

torn off. She was asked the question, "At the time of sign-ing this affidavit did you know that those papers had been altered and mutilated?" and answered, "Yes, sir; but, as I said, Mr. McIntire told me that that made no difference. I had perfect confidence in him; he was a lawyer, and I knew nothing about it; he was my uncle, and I thought I could trust him."

The witness also testified that she remembered particularly that upon the paper originally dated 1884 there was contained a bequest of the testator's glasses to those who would take them or have them. She was asked, "Did you know whether there was any other writing on the papers?" and answered, "That I don't remember."

On cross-examination, in answer to the question how she came to make the examination of the papers which resulted in discovering that a portion of one paper had been torn off, the witness answered that it was indirectly caused by receiv-ing an intimation from her uncle Edwin A. McIntire that her brothers, sister and herself would not be beneficiaries under the will, and that on such second examination she discovered that there had been slight alterations in two letters "of" that she had not noticed on the day the will was probated, and she also then noticed that a fold of the second paper was torn off, because she missed the provision about the glasses. The witness claimed that the bequest of the glasses was im-pressed upon her memory because of the oddity of the expres-sion concerning them. She also testified that she had the paper sufficiently in her mind to miss anything that was taken out of it that had been impressed upon her memory. She was then asked, "Now, would you say to the jury that there was no other writing on that fold that you say was torn off?" and answered, "That I do not remember; I can't say that there was or was not." The witness also testified that she was prejudiced against her aunts and their brother on account of an alleged conspiracy on their part to hurt her husband's good name; that the contestant came to see her about the will in February or March, 1885, at a time when she was dissatisfied, because she was not a beneficiary under

it. She further testified that she thought the will as probated was all right, and should stand as the last will of David McIntire, until she discovered that she was not to be benefited by it.

Mr. Galliher testified that he read and examined the papers found in the tin case; that he thought the paper now dated January 7, 1880, was the same paper except as to the alterations already referred to; that the paper now dated January 1, 1880, was originally dated January 1, 1884, and that he made a copy of it on April 1, 1884, and that he made a memorandum of the items on the other, which memorandum, however, was not exhibited. He said that at the time he signed the affidavit for probate of the writings he probably read the affidavit which he signed, but did not notice the alterations, and first learned of them from his wife upon leaving the court-room. He did not then return to examine the will, but some time after went back and looked at the papers and then discovered the changes of date and the alterations of the word "the" to "this" and the erasure of the word "of;" but did not think he then noticed that a part of one sheet was gone. Subsequently, on his attention being called to the absence of the provision in reference to the glasses, he again examined the papers, and thought it was then he discovered that a portion had been torn off. He was asked, "Did you know of any other writing on those papers besides the expression about the glasses, to which you have referred, that is not there now?" and answered, "I do not, sir." On cross-examination, the witness testified that he had a distinct and clear recollection that the codicil was a complete sheet at the time it was taken from the chest, and that it was probably within a month after the probate of the will that he had discovered that it had been mutilated. He could not, however, assign any reason why, after being informed by his wife of the alterations on leaving the court-house immediately after the probate of the will, he did not at once return, and if the fact was as claimed call the attention of the court to the matter. The witness further testified that for a good while after the probate he thought his wife was a legatee

under the will. He made the second examination of the will at the court-house before the intimation from Mr. McIntire that his wife would have no interest under the will, " so as to know of my [his] own knowledge that these corrections had been made." When asked how he happened to discover that a part of one paper was torn off, he answered, " Because it was a whole sheet at the time I turned it over to E. A. McIntire, and this bequest was on there in regard to the glasses ; that portion of the sheet had disappeared and that bequest was not on there." Despite the discovery of the alleged alterations and mutilations referred to, the witness said he did not go to see Mr. McIntire or demand from him an explanation, and did not call the attention of anybody to the subject until some six or eight months afterwards, when he spoke of it in the office of certain attorneys, on being interrogated in regard to the alterations. Prior to that, after hearing from Mr. McIntire that his wife would not share in the estate, witness consulted an intimate friend, a lawyer, but the witness said he did not think he told him that the will had been mutilated and altered.

Emma V. McIntire testified that on her inspection of the writings when they were taken from the chest on April 1, 1884, there was no paper dated January 7, 1880, but that the paper now bearing such date was one of the papers found, except as to the date ; also that the words " of the city of " in said paper had been altered to read " of this city." This witness also testified that she thought the second paper, now dated January 1, 1880, was one of the papers found in the chest, except that the date was January 1, 1884, when she first saw it, and that a remark to the effect that the paper was written the January previous to the death of testator was made at the time the papers were examined on April 1, 1884. She also testified that she thought the second paper was " originally a complete sheet ; just the length of the other one." She remembered having heard the paper read, and that there was some remark in it about glasses. She further testified that both papers were read aloud, and that then each one took them and read them severally, and that they all

supposed that she and her sister and brothers were entitled to
the share in their Uncle David's estate which would have
come to their father had he lived. The witness also swore
that she did not discover the alterations when she verified
the affidavit in the probate court, wherein she averred the
authenticity of the documents, though she read the papers
carefully at the time she made the affidavit, which latter
statement, however, was subsequently qualified on cross-exam-
ination by the statement that perhaps she had not read them
as carefully as she ought to have done. She further stated that
she did not notice the alterations until her sister called her at-
tention to them.

The foregoing condensed summary is substantially all the
testimony given by Mr. and Mrs. Galliher and Emma V.
McIntire, bearing upon the question of the alleged material
alterations and suppression of the documents constituting the
probated will. As already stated, these witnesses were the
only ones who testified on this subject on behalf of contestant,
and upon their testimony the case necessarily depends. If we
leave entirely out of view the evidence of the defendants to
the effect that the papers constituting the will as probated
were precisely in the condition they were when taken from
the tin case, we do not think a jury could have properly in-
ferred from this testimony that in the alleged missing portion
of the will there existed provisions so in conflict or inconsis-
tent with the probated will as to have operated to materially
alter or revoke it. That the actual alterations to which the
witnesses testify in no way materially modified or abrogated
the will, is too clear for discussion. The whole case, hence,
depends upon the assertion that there was sufficient evidence
to have authorized the jury to find that there was a material
mutilation or suppression. But none of the three witnesses
testified — granting their testimony as to the mutilation to
have been true — that the part torn off contained anything
but the reference to the glasses of the testator. It is urged,
however, that whilst they recollected that the torn off part
had in it the memoranda as to the glasses, they did not
remember whether it embraced anything else, and, therefore,

*non constat*, that it might not have contained other things, and thus would have justified the jury in drawing the presumption of a fraudulent suppression of provisions which, if known, might have revoked or modified the will. But this contention entirely obscures the difference between the failure of a witness to recollect a fact, which from the nature and extent of his knowledge he must necessarily have recalled if it existed, hence giving rise to the implication that, where it is not remembered it did not exist, and the contrary case, where from the position and means of knowledge of a witness his failure to remember justifies no such deduction. The failure of these witnesses to remember comes clearly under the first of these categories. They were willing and friendly witnesses for the contestant, manifestly desirous of stating everything favorable to his claims. They examined the will immediately after the death ; they then not only heard it read aloud, but also read it themselves; they then thought that they were interested in it as legatees. If any provision had existed revoking the will, or materially changing its provisions, such fact would in the very nature of things have been impressed upon their minds above and beyond everything else. When, therefore, after swearing to the validity and completeness of the will for the purpose of probate, after asserting rights under it in the equity suit filed against the administrator, they subsequently declared that they did not recollect whether there had been any material alteration or suppression, their want of memory necessarily negatives the presumption which might otherwise result from their testimony, if their sources of information and relation to the will had not been of the kind just mentioned. This is particularly the case as to the testimony of Mr. Galliher. He not only examined and read the will after the death, not only testified as to its completeness when it was probated, but actually made a complete copy of the will proper, and a memorandum of the items on the other paper or codicil at the time when it was examined and before it was turned over to E. A. McIntire to be probated. The context of his testimony indicates that, before he testified at the trial, he refreshed his memory by reference

to the contemporaneous copy and memoranda. It follows, therefore, when in answer to the point blank question, " Did you know of any other writing on those papers besides the expression about the glasses to which you have referred that is not there now ? " he said, " I do not know, sir," that he negatived the possibility of there having been such material alterations, because his means of knowledge were such that he must necessarily have known of the fact had it existed. Indeed, we can see no reason to doubt that if the issue presented had been probate *vel non* that the testimony introduced by the contestant here would have justified the admission of the documents to probate, that is, after eliminating the immaterial alterations which the testimony of the contestant asserts to have been made. This being true, it follows that the testimony which would have been adequate to probate the will cannot, at the same time, be sufficient to destroy the probate and annul the will.

The case of *Jones* v. *Murphy*, 8 Watts & Serg. 275, relied upon by the plaintiff in error, is not in point. In that case the existence of a second will was proved, which the evidence tended to show had been destroyed by interested parties, but there was an absence of direct evidence of the contents of the missing paper. Evidence was introduced, however, justifying the inference that the testator might have designed an alteration of the provisions of the earlier will in favor of a daughter, from whom he was estranged when the first will was executed, but who subsequently became reconciled to her father. The court held that where a fraudulent suppression was proved and in addition, other circumstances, such as a motive for a material change in a former will, the jury, in the absence of evidence as to the contents of the later testamentary writing, might presume that it contained a clause revoking the prior will. Here, however, we have two documents, the will proper, evidently deliberately and carefully written, and another instrument having the effect of a codicil, both being sedulously preserved by the testator. It is an asserted change or suppression in the latter instrument which, it is contended, would have justified the jury in finding the will to have been revoked,

although the testimony affirmatively established that even if
the suppression asserted existed, it contained no provision re-
voking the will. The necessary effect of the action of the trial
judge in directing findings favorable to the contestees was to
hold that the contestant was not entitled to relief. In this
conclusion we concur, although the negative answers given to
the fifth and seventh questions are not literally accurate, in the
light of the evidence as to the immaterial alterations offered
on behalf of the contestants. The judgment is, therefore,

*Affirmed.*