## COLONNA v. ALTON.

WILLS, EXECUTION OF; DISTRICT OF COLUMBIA CODE, EFFECT OF, UPON
EXECUTION OF EXISTING WILLS.

Under District of Columbia Code, § 1626, providing that all wills shall be
void unless signed in the presence of two persons attesting the same,
"any former law or usage to the contrary notwithstanding," an un-
attested will of personalty of a testator who executed it before the
Code went into effect but who died thereafter is void, and cannot
be admitted to probate, although under the law as it existed when
it was executed it was validly executed, no witnesses to wills of per-
sonalty being then required.

No. 1398.   Submitted February 3, 1904.   Decided March 1, 1904.

HEARING on an appeal by the proponents from an order of the
Supreme Court of the District of Columbia sitting as a probate
court refusing to admit an unattested paper writing to probate.
                                               *Affirmed.*

The COURT in the opinion stated the case as follows:

This appeal is from an order of the supreme court of this Dis-

trict holding a probate court, made on the 15th day of January,. 1904, refusing to admit to probate a certain paper writing alleged to be the last will and testament of Eilen A. Bailey, deceased. The paper bears date the 30th of March, 1898, and the alleged testatrix, the maker of the paper writing, died in the city of Washington, District of Columbia, on or about the 15th day of April, 1903, leaving certain persons surviving her as her next. of kin. The paper writing offered for probate, while signed by the deceased, is not attested by any witness. The paper writing relates to personal estate only, and contains several bequests of such personal estate to persons therein named as legatees.

The paper writing was offered for probate by Fannie B. Colonna, the person named as executrix therein; and all the parties, legatees, and next of kin, appeared; and one of the next of kin being an infant, a guardian *ad litem* was appointed, by whom the infant answered the petition for probate, and objected to the admission of the paper writing to probate as a valid will of the deceased. From the order refusing probate this appeal is taken by Fannie B. Colonna, the party named as executrix, and by several of the parties named as legatees; and the other parties interested are made appellees.

*Mr. William C. Prentiss* and *Mr. Lorenzo A. Bailey,* for the appellants:

1. The question whether or not a statute affects previously executed wills is purely one of legislative intent, and is, in general, resolved by the canon of construction that a statute will not be construed to operate retrospectively unless such intention appear with irresistible clearness. *Carroll* v. *Lessee* (1853) 16 How. 281; *Brewster* v. *McCall* (1842) 15 Conn. 274; *Mullock* v. *Souder* (1843) 5 Watts & S. 198; *Gabler* v. *Daub* (Pa. 1861) 4 Wright, 217; *Quinn's Estate* (1891) 144 Pa. 444; *Battle* v. *Speight* (1848) 9 Ired. L. 288; *Cushing* v. *Aylwin,* 12 Met. 169; *Pray* v. *Waterson* (1847) 12 Met. 262; *Loveren* v. *Lamprey* (1851) 22 N. H. 434; *Gibbon* v. *Gibbon* (1869) 40 Ga. 562; *Morgan* v. *Higgins* (1890) 42 Fed. 869; *Worrill* v.

*Wright* (1858) 25 Ga. 657. The validity of a will is to be determined by the law in force at the time of execution, and the right to republish by parol so as to pass property acquired after its execution was not destroyed by an intervening act, even if that act could be construed to abolish republication by parol, for, in that event, it would be construed to operate only on wills thereafter made. *Campbell* v. *Jamison* (Pa. 1848) 8 Barr, 498; *Jack* v. *Shoenberger* (Pa. 1853) 10 Harris, 416; and *Will of Fransen* (Pa. 1856) 2 Casey, 202.

2. The English statute of frauds, which enacted "that from and after the 24th of June, 1677, no devise of land shall be good unless," etc., was held not to apply to wills made before the day named. *Gillmore* v. *Shooter* (1678) 2 Mod. 310; *Carvill* v. *Carvill* (1684) 2 Ch. Rep. 301; *Sergeant* v. *Puntis* (1697) Prec. in Ch. 77. See also *Clayland* v. *Pearce* (1714) 1 Harr. & McH. 29. In this country statutes adding requirements with respect to execution or attestation have been held not to affect previously executed wills. *Mullen* v. *McKelvy* (1836) 5 Watts, 399; *Murry* v. *Murry* (1837) 6 Watts, 353; *Gaylor's Appeal* (1875) 43 Conn. 82. Opposed are: *Houston* v. *Houston* (1826) 3 M'Cord L. 491; *Elcock's Will,* 4 M'Cord L. 39, and *Sutton* v. *Chenault* (1854) 18 Ga. 1.

3. In cases where the will was not validly executed under the law as it stood at the time of execution, but the new law so modified the requirements of execution or attestation that the will would be good if the new law were applicable, there is also conflict of authority. See *Camp* v. *Stark* (1875) 81 Pa. 235; *Giddings* v. *Turgeon* (1885) 58 Vt. 106; *Lane's Appeal* (1889) 57 Conn. 182; *Packer* v. *Packer* (1897) 179 Pa. 580. Opposed are: *Learned's Estate* (1886) 70 Cal. 140; *Barker's Estate* (Cal. 1875) Myrick Prob. Rep. 78; *Lawrence* v. *Hebbard* (1850) 1 Bradf. 252; *Langley* v. *Langley* (1894) 18 R. I. 618. In an intermediate position is *Hoffman* v. *Hoffman* (1855) 26 Ala. 535, where a will executed with two subscribing witnesses, valid when executed as to personalty but invalid as to real estate, was held to be validated as to the latter by a statute intervening before the

testator's death which provided that no will should be effectual to pass real or personal property without two witnesses. See also *Crofton* v. *Ilsley* (Me. 1826) 4 Greenl. 134.

4. The English mortmain act of 1736, which declared that no lands or moneys to be laid out thereon shall be given or charged for any charitable uses, unless by deed, etc., was construed as intended to operate only prospectively and held not to disturb dispositions in previously executed wills, though the testators died after the act. *Ashburnham* v. *Bradshaw*, 2 Atk. 36; *Adlington* v. *Andrews*, 3 Atk. 141; *Atty. Gen.* v. *Lloyd*, 1 Ves. 551; *Atty. Gen.* v. *Andrews*, 1 Ves. 225; *Willett* v. *Sandford*, 1 Ves. 178; *Atty. Gen.* v. *Bradley*, 1 Eden, 482; *Atty. Gen.* v. *Downing*, Dick. 414 Ambl. 550; *Thomas* v. *Lloyd*, L. R. 18 Eq. 198. Opposed is the case of *Atty. Gen.* v. *Heartwell*, Ambl. 451, 2 Eden, 234. See also *Taylor* v. *Mitchell* (1868) 57 Pa. 209; *DePeyster* v. *Clendening* (1840) 8 Paige, 295; *Blackbourn* v. *Tucker* (1895) 72 Miss. 735; *Adams* v. *Wilbur* (1835) 2 Sumn. 266; *Hamilton* v. *Flinn* (1858) 21 Tex. 713; *Martindale* v. *Warner* (Pa. 1850) 3 Harris, 471; *Bishop* v. *Bishop* (1843) 4 Hill, 138; *Goodsell's Appeal* (1887) 5 Conn. 171; *Re Tuller* (1875) 79 Ill. 99; *Swan* v. *Sayles* (1896) 165 Mass. 177.

5. As to statutes affecting testamentary capacity, the rule against retrospective operation was applied in *Kurtz* v. *Saylor* (Pa. 1852) 8 Harris, 205, where it was held that the capacity of a married woman to make a will was to be determined by the law in force when the will was made, and not by the statutes in force at the time of her death. See also *Mitchell* v. *Kimbrough* (1896) 98 Tenn. 535. On the other hand, see *Wakefield* v. *Phelps* (1858) 37 N. H. 295; *Burroughs* v. *Nutting* (1870) 105 Mass. 228; *Johnson* v. *Williams* (1890) 152 Mass. 414; *Draper* v. *Morris* (1893) 137 Ind. 169. See also *Jones* v. *Ogle* (1872) L. R. 8 Ch. App. 192; *Capron* v. *Capron* (1873) L. R. 17 Eq. 288; *Hasluck* v. *Powley* (1874) L. R. 19 Eq. 271.

6. *Bredenburg* v. *Powley* (1891) 36 S. C. 197, is an example of appropriate language to evidence retrospective intent.

See also *Hargroves* v. *Redd* (1870) 43 Ga. 142; *Perkins* v. *George* (1864) 45 N. H. 453.

7. The fallacy of the position that a will, whether of realty or personalty, has no existence until the death of the testator, and must, therefore, be governed by the law then in force (*Wakefield* v. *Phelps,* 37 N. H. 295), is apparent when it is remembered that a will, if executed according to law, is effective unless revoked in some manner prescribed by the law, and that the validity of a will depends upon mental capacity at the time of execution. The necessity of revocation in order to destroy a testamentary paper, and the rule that, if the testator become insane after executing his will, the will is still good, demonstrate that the testamentary act has existence from the time of execution, though it does not take effect until death.

8. Examining the chapter of District of Columbia Code entitled "Wills," in the light of the rule against retrospective operation, it is found that the language is wholly prospective. The verb form is "shall be" (§§ 1623, 1625–1627).

If the intention had been to revoke all previously executed wills, it would have been easy to use clear and unmistakable language or add an express provision to that effect.

Sec. 1634 provides that "no nuncupative will hereafter made shall be valid in the District," carrying the inference that such a will previously made would still be good notwithstanding § 1626.

Sec. 1636 repealed practically all the previous general substantive statute law and § 1638 saving "any act done," etc., under any statute so repealed, expressly evidences the legislative intent that the Code should not look backward but only forward.

Nor is there anything in the sections governing proof of wills that prevents the probate of a will of personalty without witnesses. Sec. 131 merely provides that the court shall proceed to take proof of the will and that all witnesses to the will who are in the District must be produced or their absence accounted for.

Sec. 132 applies only in case the will contains a devise of real estate.

*Mr. E. Brady,* for the appellees, filed no brief.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

There is no question as to the validity of the paper writing as the testament of the deceased at the time it was executed,— that is to say, on the 30th day of March, 1898. As the law then existed in this District, a paper purporting to be the will of a deceased person, which related only to personalty, and made and signed by him, required no other formality to render it valid as a testamentary instrument. *McIntire* v. *McIntire,* 162 U. S. 383, 40 L. ed. 1009, 16 Sup. Ct. Rep. 814. But a very different and positive rule and requirement of law was enacted and brought into existence since the date of the paper, and was in force at the death of the maker of the paper propounded for probate, as the only and exclusive rule of law upon the subject. And the question is whether the law as it existed at the date of the paper writing, or the law that has since repealed all former laws upon the subject, and prescribed a different and positive rule as a condition upon which a paper purporting to be a will can be admitted to probate, shall control and determine the question as to the validity of the paper offered for probate. It is not a question as to what particular property may be operated upon, but whether the paper offered for probate is valid as a will.

By act of Congress of March 3, 1901, a Code of Law for the District of Columbia was adopted, to go into effect and operation from and after the 1st day of January, 1902.

By the Code thus adopted, chapter 59, title "wills," it is enacted as follows:

"Sec. 1623. *What may be devised.*—All lands, tenements, and hereditaments, and personal estate, which might pass by deed or gift, or which would, in case of the proprietor's dying intestate, descend to or devolve on his or her heirs or other representatives, shall be subject to be disposed of, transferred, and

passed by his or her last will, testament, or codicil, *under the following restrictions. . . .*"

"Sec. 1626. *Form of Will and Revocation.—All wills and testaments* shall be in writing and signed by the testator, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the said testator by at least two credible witnesses, *or else they shall be utterly void and of no effect;* and, moreover, no devise or bequest, or any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, canceling, tearing, or obliterating the same by the testator himself, or in his presence and by his direction and consent; but all devises and bequests shall remain and continue in force until the same be burned, canceled, torn, or obliterated by the testator or by his direction in the manner aforesaid, or unless the same be altered or revoked by some other will, testament, or codicil in writing, or other writing of the testator, signed in the presence of at least two witnesses attesting the same, *any former law or usage to the contrary notwithstanding.*"

That this provision of the Code was intended to make one uniform rule, exclusive of all others, applicable alike to both devises of real estate and bequests of personal property, would seem to be free of all doubt. Indeed, language could hardly have been more carefully employed to express that purpose. All lands, tenements, and personal estate can only be disposed of by will, testament, or codicil, subject to the restriction prescribed; *and all wills and testaments* shall be in form prescribed, and shall be attested and subscribed in the presence of the testator by at least two witnesses, *or else they shall be utterly void and of no effect.* The use of these terms utterly precludes the application of any other rule to wills of persons dying after the adoption of the Code than the one thereby prescribed. It certainly did not intend to keep the former and the new rule in coexistence to be applied according to the dates of the wills offered for probate, regardless of the fact that the party making the proposed will had died long after the adoption of the Code, and the es-

tablishment of the new rule for the admission of wills to pro-
bate. The former law, as to the disposition by will of personal
estate, was exceedingly loose, and allowed of disposition by will
of such estate without anything like strict formality, or guards
against frauds and abuse. It was the great object of the pres-
ent provision of the Code to close the door to such frauds and
abuse, by throwing around the making of wills of personal es-
tate the same safeguards that have for so many years been the
safeguards in devising of real estate under the wise provision
of the statute of frauds, which has been generally adopted in
the laws of the States of this country.

All wills, in their very nature, are ambulatory and revocable
during the life of the testator; and, in respect to personal es-
tate, they speak only from and have effect upon the death of the
testator; and to say that a will shall have effect and be declared
valid in respect to a prior state of the law, which has been re-
pealed and given place to a quite different rule as a substitute
therefor, is to declare valid a testamentary paper without exist-
ing law to support it, and that, too, in the very teeth of the exist-
ing provision of the Code, which declares that all wills not made
and executed according to that provision shall be absolutely void
and of no effect. It cannot be questioned that Congress had the
legislative power to enact the provisions of the Code and to make
them applicable to all wills whether executed before or after
the Code went into effect, if presented for probate after the Code
became the law. Suppose, instead of the language employed in
the provision of the Code, Congress had declared that, unless
the will should appear to have been executed in accordance with
the terms prescribed, it should be utterly void and of no effect,
*whether executed before or after the adoption of the Code,* could
it be contended that, in such case, there could be any serious
question but that such provision would exclude the paper of-
fered in this case from probate? If that be so, why should the
result be different on the terms employed in the provisions of
the Code? They amount substantially to the same thing as the
case supposed. The terms employed in the sections of the Code
are not only restrictive, but negative and imperative. It is de-

clared that the paper wanting the forms required shall not be admitted to probate, but shall be utterly void and of no effect, any former law or usage to the contrary notwithstanding.

Great industry has been shown by counsel in bringing together in their elaborate brief the cases that are supposed to have some bearing on the question here presented. But we have found but few of them that have any bearing upon the question involved in this case, and those few would seem to be quite against the position contended for by counsel. As for instance, of the cases cited, we have the cases of *Houston* v. *Houston,* 3 M'Cord L. 491, 15 Am. Dec. 647; *Re Elcock,* 4 M'Cord L. 39, 17 Am. Dec .703; *Sution* v. *Chenault,* 18 Ga. 1; *Wakefield* v. *Phelps,* 37 N. H. 295; *Perkins* v. *George,* 45 N. H. 453; *Langley* v. *Langley,* 18 R. I. 618, 30 Atl. 465; *DePeyster* v. *Clendining,* 8 Paige, 295. These are some of the American cases upon the subject, and these, and all the other cases referred to, turn more or less upon the terms of the particular statutes under which they arose for decision. And so the cases that arose under the English Statute of Frauds, referred to in the brief. By that statute it was enacted "that from and after the 24th day of June, 1677, no devise of land shall be good, unless," etc., and it was held that the statute did not apply to wills made before the day named. This ruling was founded upon the obvious reading and meaning of the statute, and the time limited had reference to the time of the devise made, that is, by express terms, all devises were excluded from the operation of the statute that were *made prior* to the day named. It had no reference to the requirement of form for the probate of wills of personal estate.

The case upon which most reliance is placed by counsel is that of *Carroll* v. *Carroll,* 16 How. 275, 14 L. ed. 936. But we are wholly unable to perceive in what respect that case resembles the present case. That was a case where the attempt was made to make a previously executed will of real estate operate upon and pass after-acquired real estate. It was not a case involving the validity of the will, nor the sufficiency of the legal requirements to entitle the will to admission to probate. The testator, Carroll, made in due form his will to pass real estate in 1837.

This was in the State of Maryland, and at the time of the execution of the will the law of that State was that lands of which the testator was not seised at the time of making his will, could not be devised thereby. In 1842 the testator acquired the real estate in controversy, and died seised thereof in August, 1851. In the meantime, that is, in February, 1850, the legislature of the State passed an act which provided: "That every last will and testament executed in due form of law, *after the first day of June next,* shall be construed with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed on the day of the death of the testator, unless a contrary intention shall appear by the will." By the second section of the act it was provided: "That the provisions of this act shall not apply to any will executed before the passage of this act, by any person who may die before the first day of June next, unless in such will the intention of the testator shall appear that the real and personal estate which he may own at his death should thereby pass;" the act to take effect on the first of June then next, 1850.

It was held, upon the construction of this act, that the lands acquired by the testator in 1842 did not pass to the devisee in the will, but descended to the heirs of the testators.

In speaking of the scope and object of the act, the court said that its natural and obvious meaning was that wills executed after the first day of June, 1850, were the only subjects of its operation. That the words "after the first day of June next" referred to and qualified the words "executed in due form of law," which they follow, just as in the same section the words "on the day of the death of the testator" referred to and qualified the word "execute." In the former case they indicate the time when the will shall be deemed to have been executed; in the latter, the period of time when it was actually executed. The court declared it to be their opinion, that the first section of the law was free from ambiguity, and applied only to wills executed after the first day of June, 1850; and as the will was executed before that day, it was not within the first section. Nor was it within the second section of the act; because, as said by the court,

that section applied only to cases in which the testator, having executed his will before the passage of the act, might die before the first day of June then next, and the testator, Carroll, survived till after that day.

It is clear, we think, this case of Carroll's lessee furnishes no authority for the contention of the appellants in this case; nor is there any case cited that has such strict and close analogy to the present case as to furnish an authority for the admission of the paper in this case to probate.

We find no error in the order of the court below, refusing. the admission of the paper offered to probate, and we must therefore affirm said order; and it is so ordered.     *Order affirmed.*