871 P.2d 22

**In the Matter of the ESTATE OF Lola KIMBLE, Deceased.**

**Corea McKAY, Contestant–Appellant,**

v.

**O.C. KIMBLE, Proponent–Appellee.**

**No. 14437.**

Court of Appeals of New Mexico.

Feb. 8, 1994.

Robert O. Beck, Beck & Cooper, Lawyers, Clayton, for contestant-appellant.

Gary D. Alsup, Alsup Law Office, Clayton, for proponent-appellee.

*OPINION*

BLACK, Judge.

Corea McKay (Contestant) challenges the validity of a will of her deceased sister, Lola Kimble (Decedent). On appeal, Contestant argues that the district court: (1) erred in directing a verdict on the issue of due execution; (2) erred in directing a verdict on the issue of testamentary intent; (3) abused its discretion in holding that the issue of mistake had not been properly raised; and (4) abused its discretion in limiting closing argument on these issues. We affirm.

## I. FACTS

Decedent moved to Union County about 1936. She married Roy Kimble in 1938, and they remained married until his death in 1972. When Decedent married Roy Kimble in 1938, O.C. Kimble, Roy Kimble's son, was twenty-three and living on his own. However, O.C. Kimble had relatively frequent contact with Decedent. Decedent's family, on the other hand, had relatively few contacts with her after she left Oklahoma in the 1930's, and those contacts diminished over the years. The last time Decedent made a trip to Oklahoma to visit her family was in 1972. Contestant made overnight visits to Decedent's residence on only one or two occasions after 1972.

Decedent died February 19, 1992. A will dated January 13, 1986, was tendered for probate by the personal representative, O.C. Kimble (Proponent), Decedent's stepson. Under that will Proponent would receive Decedent's entire estate. An objection and counter petition was filed by Contestant.

The will proffered by Proponent is on two sheets of paper. The signatures of the attesting witnesses appear on the second sheet and are dated "1–13–86." The witnesses to the execution of the proffered will were W.L. Gibbs and J.H. Jackson, Jr. Gibbs is the president and chairman of the board of the Farmers and Stockmens Bank of Clayton and has been president of that institution since 1974. Jackson is a member of the board of the same bank and has been the senior vice president of that institution since 1974. Both attesting witnesses testified that

they had known Decedent for more than twenty years; that on January 13, 1986, they were greeted by Decedent in her home; that Decedent told them she had asked them to come there to witness her will; that Decedent appeared alert and oriented in all respects and knew who they were, who she was, and what she was doing. Both witnesses also testified they saw her sign both pages of the document tendered for probate by Proponent; that Decedent was behaving in a normal and rational manner on the day she executed her will; that they had no doubt in their minds that the will tendered for probate by Proponent was the document they saw Decedent execute January 13, 1986; that the will was executed in their presence and in the presence and sight of each other; and that Decedent told them that the document was her will.

There was evidence that at the time of execution of the will Decedent was 92 years old and in a state of mental and physical decline. A physician testified that by 1988 Decedent suffered from Alzheimer's, senile dementia, or a combination of the two.

The first page of the proffered will contains a typographical error. ("Heretofore" was misspelled.) The date on the first page has been whited out and changed to read, "this 13 day of January, 1986." Both witnesses indicated that at the time they saw Decedent sign, there were two pages, but they did not see any white-out on the first page. The first page of the will stops approximately two inches above the bottom of the page, and the last line of the attestation clause and the witnesses' signatures appear on a second page.

The case went to trial before a Union County jury in October 1992. Contestant raised the objections of lack of due execution, lack of testamentary intent, lack of capacity, and undue influence. Proponent moved for a directed verdict on all issues at the end of the Contestant's case and again at the conclusion of all the evidence. The district court directed a verdict on the issues of due execution and testamentary intent. The district court also held that mistake had not been raised in the pleadings or tried by consent and refused the instructions that Contestant

tendered on the issue of mistake. The jury found in favor of Proponent.

## II. *STANDARD OF REVIEW*

■ Directed verdicts are not favored and should only be granted when a jury could not logically and reasonably reach any other conclusion. *Western States Mechanical Contractors, Inc. v. Sandia Corp.,* 110 N.M. 676, 679, 798 P.2d 1062, 1065 (Ct.App.), *cert. denied,* 110 N.M. 653, 798 P.2d 1039 (1990). However, it is fundamental that evidence must be adduced to support all issues of fact essential to the maintenance of an enforceable claim. *C.E. Alexander & Sons v. DEC Int'l, Inc.,* 112 N.M. 89, 93, 811 P.2d 899, 903 (1991). If the evidence fails to present or support an issue essential to the legal sufficiency of the asserted claim, the right to a jury trial disappears. *Id.* Whether there exists sufficient evidence to support a claim or defense is a question of law for the trial court, reviewable by the appellate court. *Sunwest Bank, N.A. v. Garrett,* 113 N.M. 112, 115, 823 P.2d 912, 915 (1992).

## III. *DUE EXECUTION*

■ The will at issue contains an attestation clause in the following form:

> The foregoing instrument, consisting of two typewritten pages, was signed, published and declared by the Testatrix to be her Last Will and Testament in the presence of us, who at her request, in her presence, and in the presence of each other, have hereunto subscribed our names as witnesses.

While not in the form which would create a conclusive presumption pursuant to NMSA 1978, Section 45–3–406 (Repl.Pamp.1983), the above attestation clause is sufficient to create a rebuttable presumption of due execution of the will. *See In re Estate of Padilla,* 97 N.M. 508, 510–11, 641 P.2d 539, 541–42 (Ct. App.1982); *see also* NMSA 1978, § 45–2–504 (Repl.Pamp.1993) (dictating required language).

In formal testacy proceedings, proponents of the will have the burden of establishing prima facie proof of due execution. NMSA 1978, § 45–3–407 (Repl.Pamp.1993). The proponent, therefore, must introduce evidence the will was signed by the testator, in the presence of two or more credible witnesses, who must have signed in the presence of the testator and each other. NMSA 1978, § 45–2–502 (Repl.Pamp.1993). In the present case, Proponent introduced evidence to this effect and, the evidence was sufficient to establish prima facie proof.

Contestant argues that the evidence regarding the execution of the proffered will was conflicting and that the district court therefore erred in directing the verdict. Contestant would support her argument by pointing to "suspicious circumstances" such as the obvious white-out and the witnesses' testimony that they did not remember such white-out at the time they attested the will.

Contestant failed to produce any evidence, however, as to why these facts are significant, especially since both witnesses testified that they saw Decedent sign both pages of the will in their presence. Where the only evidence is that the will was signed by testator and attested by the witnesses on the same date, the fact the will was misdated is immaterial. *Miller v. Mitchell,* 224 Ark. 585, 275 S.W.2d 3, 5–6 (1955); *see also McIntire v. McIntire,* 162 U.S. 383, 396, 16 S.Ct. 814, 819, 40 L.Ed. 1009 (1896) (decedent's alteration of date did not materially modify or abrogate the will). *But see In re Estate of Campbell,* 47 Wash.2d 610, 288 P.2d 852, 855 (1955) (erasures and possible alterations as to year of execution of will deemed material where suspicious circumstances were evident each time date appeared in will and question whether will at issue was latest will that existed).

Contestant next argues that a suspicious circumstance exists arising from the fact that Decedent signed the will in two places on the first page, yet the witnesses failed to initial that page. While it is good practice to have witnesses initial the pages they do not sign, Thomas E. Atkinson, *Handbook of the Law of Wills* § 74, at 350 (2d ed. 1953), it is more significant here that Decedent signed both pages. Moreover, as legal scholars have repeatedly pointed out, the requirement of additional formalities in the attestation of wills is unlikely to provide any safeguard against

the substitution of fraudulent documents. Atkinson, *supra*, § 72, at 340; 2 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 19.120, at 231–32 (rev. treatise 1960); Ashbel G. Gulliver & Catherine J. Tilson, *Classification of Gratuitous Transfers*, 51 Yale L.J. 1, 10–11 (1941).

The final suspicious circumstance alleged by Contestant is the "large unfilled space" following a portion of the attestation clause on the first page. (Including the signature of Decedent at the bottom of the page, the space on the first page of the proffered will is less than two inches.) Contestant argues this space was sufficient to allow the addition of the last line of the attestation clause, as well as the signatures of both witnesses, so that the entire will would have appeared on one page.

Under the English Wills Act, it was required that the testator sign at the end or foot of the will. Thomas J. Goger, Annotation, *Wills: When is Will Signed at "End" or "Foot" as Required by Statute*, 44 A.L.R.3d 701, 706 (1972). The purpose was to prevent fraudulent additions. Atkinson, *supra*, § 64, at 304–05. Our version of the Uniform Probate Code, however, contains no such requirement, *see* Section 45-2–502, and even under the Wills Act and its successors, spaces of twenty-three inches or more were not found to violate the requirement. *Mader v. Apple*, 80 Ohio St. 691, 89 N.E. 37, 38–39 (1909). The space is less significant where, as in the present case, the language of the attestation clause continues in sequence on the second page. *In re Succession of Chopin*, 214 So.2d 248, 253 (La.Ct.App.1968); *In re Puckett's Estate*, 240 Iowa 986, 38 N.W.2d 593, 598 (1949). Finally, much more significant than the space on the bottom of page one of the will is the fact that Decedent also signed below the two witnesses on the bottom of page two of the will.

Contestant does not provide direct legal authority which supports the contention that any of the suspicious circumstances alleged required submission of the case to the jury, and cases in other jurisdictions have affirmed directed verdicts on analogous facts. *See Dearing v. Dearing*, 132 Va. 178, 111 S.E. 286 (1922); *Hoover v. Hoover*, 238 Iowa 88,

26 N.W.2d 98 (1947); *In re Estate of McIntyre*, 355 Mich. 238, 94 N.W.2d 208 (1959).

## IV. TESTAMENTARY INTENT

■ Contestant next argues that the district court erred in directing a verdict on "testamentary intent". Contestant produced testimony that, about the time of the execution of the will, Decedent called a friend and was very upset because two bald men had her sign a paper and she did not know what she had signed. (The two witnesses who attested to the proffered will were bald.) Contestant also produced testimony that, at a time unspecified, Decedent had a conversation with one of the attesting witnesses in which she discussed leaving her estate to charity. Finally, Contestant produced testimony that one year before the will was executed Decedent did not recognize her niece. The district court admitted all of this testimony and permitted the jury to consider it on the issue of testamentary capacity, but, by directing the verdict, the district court did not permit the jury to consider this evidence on the issue of testamentary intent.

■ There is a logical relationship between testamentary capacity and testamentary intent, and these issues are occasionally discussed together. *See, e.g.*, Atkinson, *supra*, § 46, at 205. In order to prove testamentary capacity evidence must be introduced that testator had knowledge of: (1) the meaning of executing a will; (2) the extent and character of her estate; and (3) the natural objects of her bounty. *In re Will of Greig*, 92 N.M. 561, 562, 591 P.2d 1158, 1159 (1979) (quoting *McElhinney v. Kelly*, 67 N.M. 399, 403, 356 P.2d 113, 115 (1960)). Testamentary intent, on the other hand, focuses on whether the testator intended the instrument to effect a disposition of property at the time of death. *In re Estate of Martinez*, 99 N.M. 809, 813, 664 P.2d 1007, 1011 (Ct.App.), *cert. denied*, 99 N.M. 740, 663 P.2d 1197 (1983). It does not depend upon the testator's understanding of the legal effect of the document. *In re Thompson*, 375 Pa. 193, 100 A.2d 69, 72 (1953). Where testamentary intent can be plainly found in the instrument, it is sufficient, and extrinsic evidence is not admissible on that issue. *See In re Estate of*

*Kelly,* 99 N.M. 482, 489, 660 P.2d 124, 131 (Ct.App.1983) (extrinsic evidence admissible if document is ambiguous); *see also Benton v. Albuquerque Nat'l Bank,* 103 N.M. 5, 11, 701 P.2d 1025, 1031 (Ct.App.) (where testamentary intent is clearly apparent from the language of the instrument, additional evidence on the question need not be considered), *cert. quashed,* 103 N.M. 62, 702 P.2d 1007 (1985).

It is obvious that the evidence of Decedent's confusion as to what she had signed, the identity of her niece, and her discussion of a charitable bequest were relevant to testamentary capacity. They were admitted on that issue and, apparently, the jury did not find them convincing.

It is not obvious, and Contestant does not explain, how any of this evidence would be probative on whether Decedent intended the will to be something other than a testamentary transfer. Indeed, on its face the proffered document is captioned in bold print "Last Will and Testament." The introductory paragraph reads: "I, LOLA KIMBLE, of Clayton, New Mexico, do hereby make, publish and declare this to be my Last Will and Testament and I do hereby revoke any and all other testamentary dispositions by me heetofore [sic] made." The first numbered paragraph appoints Proponent as personal representative. The second numbered paragraph states, "I give, bequeath and devise all of my property, real, personal and wherever situated to O.C. Kimble, Clayton, New Mexico." Finally, the attestation clause provides, inter alia, "The foregoing instrument, consisting of two typewritten pages, was signed, published and declared by the Testatrix to be her Last Will and Testament...."

This will plainly exhibited testamentary intent. The evidence relied on by Contestant was irrelevant on this issue, and the district court did not err in directing the verdict on testamentary intent.

## V. *MISTAKE*

■ Contestant also argues the district court erred in refusing to submit the issue of mistake to the jury. During directed verdict motions at the end of the evidence, Proponent's counsel argued the issue of mistake was not pled and was not in the case. Contestant's counsel conceded mistake was not pled, but argued it should come in by amendment since it was no surprise and evidence on the issue was introduced unopposed. *See* SCRA 1986, 1–015(B) (Repl.1992); *Page & Wirtz Constr. Co. v. Solomon,* 110 N.M. 206, 208–09, 794 P.2d 349, 351–52 (1990) (jury may be instructed on issues tried by consent). The trial evidence Contestant relies on to introduce mistake is that Decedent told a friend that two bald men had her sign a paper and she did not know what it was; that Decedent had a conversation with one of the witnesses to the will regarding a charitable bequest; and that the date on the first page of the will had been changed.

The district court found that Contestant had not properly raised the issue of mistake and that the evidence did not directly address the issue of mistake but rather went to testamentary capacity. Thus, the pertinent evidence admitted without objection was relevant to an issue which was properly raised in the pleadings in addition to being relevant to the issue of mistake. Under these facts, we agree that the issue of mistake was not tried by implied consent. *See Schmitz v. Smentowski,* 109 N.M. 386, 390–91, 785 P.2d 726, 730–31 (1990). The district court did not err in refusing to submit an instruction to the jury based on the issue of mistake. *See id.; Skeet v. Wilson,* 76 N.M. 697, 700–01, 417 P.2d 889, 891 (1966) (not error to refuse to instruct on theories not raised in pleadings).

## VI. *CLOSING ARGUMENT*

■ Finally Contestant argues the district court erred in limiting her counsel during closing argument. We note at the outset that the district court has considerable discretion in controlling closing argument. *See Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 29, 766 P.2d 280, 289, *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989). The objection and ruling complained of came early in Contestant's counsel's closing statement. Contestant's counsel had just gone over the instructions on undue influence and testamentary capacity and said he intended to review some of the documentary evidence in the case. He then pointed out

the lack of the middle initial in the heading of the will as contrasted to the signature of Decedent that contained her middle initial. Proponent's counsel objected, saying this argument went to issues that had been directed out of the case. Contestant's counsel argued this went to an inference of who procured the will. The district court sustained the objection.

Contestant argues that her counsel was prohibited from arguing about other suspicious circumstances on the face of the will. Our review of the record indicates no attempt to make such arguments, and Contestant's counsel provides no citations to support such contentions. This Court will not search the record to find evidence to support an appellant's claim. *In re Estate of Heeter,* 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct. App.), *cert. denied,* 113 N.M. 690, 831 P.2d 989 (1992). Where the record fails to indicate that an argument was presented to the court below, unless it is jurisdictional in nature, it will not be considered on appeal. *Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). In the instant case, lacking any evidence that the matter was raised in the district court, we will not consider the matter now.

## VII. CONCLUSION

The district court submitted the issues of lack of testamentary capacity and undue influence to the jury which found in favor of the Proponent. Based on the evidence cited, we cannot say the district court erred in refusing to submit to the jury the issues of due execution or lack of testamentary intent to the jury. Nor do we find the district judge abused his discretion in holding the issue of mistake had not been properly raised or in limiting closing argument. It is therefore ordered that the judgment based on the jury verdict is affirmed.

IT IS SO ORDERED.

DONNELLY and CHAVEZ, JJ., concur.