MARY CONVEY, ET AL., Plaintiffs and Appellants, v. BERNARD MURPHY, ET AL., Defendants and Appellees.

**Wills:** UNREASONABLE PROVISIONS: MENTAL CAPACITY. The fact that 1 a testator bequeathed his entire estate to his wife for the support of herself and minor children, part of whom were invalids, to the exclusion of his other children during the lives of the invalid minors, was not such an unreasonable provision as to indicate mental incapacity, but rather tended to show sufficient capacity to make a just provision for those dependent upon him; nor did

the fact that no provision was made to meet the contingency arising from the death of part of the invalid children, and the arriving at majority of some of the minors, render the will invalid; since all of his children were the final beneficiaries and there was nothing in the will precluding a division of any income to the estate not required to support the minors and the surviving invalid children.

Same: UNDUE INFLUENCE. The mere fact that relatives of the testator interested themselves in the making of his will for the benefit of his widow and children is not sufficient to show the exercise of undue influence; such relatives not receiving any benefit from the will.

Same: EXECUTION: PRESUMPTION: BURDEN OF PROOF: EVIDENCE. Due execution of a will which has been admitted to probate will be presumed until the contrary is shown; and the contestants have the burden of proving either mental incapacity or undue execution. In the instant case the evidence is held insufficient to show mental incapacity of the testator at the time he executed the will.

*Appeal from Keokuk District Court.*—HON. K. E. WILL-COCKSON, Judge.

THURSDAY, FEBRUARY 17, 1910.

THIS is an original and independent action to contest a will. At the close of the evidence, the court directed a verdict for the defendants. Plaintiffs appeal.— *Affirmed.*

*Yoss & Wallace* and *Stockman & Baker,* for appellants.

*Talley & Hamilton,* for appellees.

PER CURIAM.—The instrument involved in the controversy is the purported will of Richard Murphy, who died on August 30, 1906. The will was executed during his last sickness, and not more than two hours before his death. It was duly probated on October 3d following, and administration of the estate was had thereunder. This

proceeding was instituted in May, 1908. The petition alleges that the testator was without sufficient mental capacity to make a will at the time of its alleged execution, and an amendment to the petition filed during the trial alleges that the will was procured by undue influence exercised by Tom Murphy and Tom O'Rourke, a brother and brother-in-law of the deceased.

The real question in the case is whether sufficient evidence was adduced upon the trial to warrant the submission of the case to the jury. One fact upon which the contestants lay great stress as a circumstance in their favor is the alleged unreasonableness of the will itself, and we direct our first attention to that question. The deceased was fifty years of age at the time of his death, and left surviving him his widow and eleven children, three of whom were of age and eight of whom were minors. Of the minors four were crippled invalids, helpless and hopeless. They were afflicted with some spinal trouble which came upon each one at the age of seven or eight years. The property of the deceased consisted of a farm of one hundred and sixty acres upon which he lived, and two outlying tracts of eighty and forty acres respectively, and the personal property usually necessary to the operation of such a farm. The value of his estate was approximately $25,000 or $30,000. The will was drawn by one Irwin, a justice of the peace at Keswick. The will was drawn in the sick room, and after Irwin had questioned the deceased as to his wishes. He testified as a witness for the plaintiffs that the deceased told him that he wanted "those invalid children taken care of," and that "he wanted his property fixed in a way that it would be used for their support." The will is very brief in form. the material part of it being as follows:

2nd. I give, devise and bequeath to my wife, Catherine, all my estate personal and real for the support of herself and minor children. In case she should die before

my children reach their majority, or are unable in any way
to provide for themselves I direct that the estate be kept
for their support.

In case my invalid children should die before my
wife's decease, then I direct after the decease of my wife
that the property be equally divided between and among
all of my children then living.

3d. I hereby nominate, constitute and appoint my
said wife, Catherine Murphy, executrix to act without
bond of this my last will and testament.

As will be readily seen, the will was not skillfully
drawn, and its proper construction might present a de-
batable question. We are not now dealing, however, with
that feature of the case. The contention
of the appellants is that these provisions are
so unreasonable as to indicate a want of
mental soundness in the person who made
them. We can not concur in this view. Unskillful and
indefinite in form as the will may be, it is consistent with
the profound concern with which a person of sane mind
would contemplate the future welfare of his helpless chil-
dren, and the increased burden of support that was about
to fall upon the mother. He might sanely believe that,
after his departure, the mother would need the aid of all
the resources of his estate in order to bring safely to man-
hood estate eight minor children, four of whom were al-
ready overtaken with a permanent calamity and others
of whom had not yet reached an age which insured them
against the same infirmity. Without intimating, therefore,
any opinion as to what construction this will should bear
in its application to the circumstances which have arisen
since the death of deceased, we think that the provisions of
the will were not unreasonable. On the contrary, we think
they were so reasonable and so in accord with the necessi-
ties of the situation that they tend to support the mental
capacity of the testator rather than otherwise.

Since the death of the father the widow and three of

1. WILLS: unrea-
sonable pro-
visions: mental
capacity.

the crippled invalids have died; i. e., John died in January, 1907, at the age of fourteen years; the mother died in July, 1907; Lawrence died in September, 1907, at the age of seventeen years; Bernard died in March, 1909, at the age of fifteen. The family is therefore reduced to eight children, four of whom are now adult and four of whom are minors, including one invalid. It is urged that the will is unreasonable because it makes no provision for the contingency which has actually arisen since the death of the deceased, and that the effect of the will is to tie up the whole estate for the benefit of one cripple and the minor children. Granting that less expense will be incurred in the care of one invalid than the care of four, and assuming that the income of the estate may be greater than is needful to meet the present burden, the fact remains that the testator designated all his children as the final beneficiaries of his estate, and there is nothing in the will which forbids a distribution of any surplus income among such beneficiaries, even before a final distribution can be had. The plaintiff Mary Convey is the oldest of the family, and has married since her father's death. Of those living she alone contests the will. All the others are content with its provisions. For some reason not apparent in the record, an administrator was appointed for the estate of the two crippled children, Lawrence and John, and he has joined the plaintiff in the contest. Why the administrator of the invalids for whose benefit the will was made and who obtained the benefit of it while they lived should be heard to contest it after their death is not made apparent to us in this record. In so far as these crippled children can be deemed to have left any estate, the defendants are their heirs to the extent of seven-eights thereof. We deem it proper, therefore, to scrutinize plaintiff's case somewhat critically.

The charge that the will was obtained by undue influence is also without merit under the evidence. This is not

saying that Thomas Murphy and Thomas O'Rourke did

**2. SAME:**
**undue**
**influence.**

not interest themselves in the matter of making the will, but there is no evidence of any improper conduct on their part. The one was the brother of the deceased and the other was the husband of the sister of the deceased. The will as drawn manifested an intent to place the estate in the control of the wife for the support of the minor and crippled children. Neither Thomas Murphy nor Thomas O'Rourke sustained any relation to her except by marriage, nor had they any motive to see such a provision made except a commendable solicitude for her and for the more helpless members of her family. We find nothing in the record which can be said to impeach the will to any degree upon this ground.

The debatable question in the case is whether it can be said that there was sufficient evidence to go to the jury of such mental incapacity on the part of the deceased as to

**3. SAME:**
**execution:**
**presumption:**
**burden of**
**proof:**
**evidence.**

defeat the will on that ground. At this point the case is not without its doubts and may fairly be said to approach the border line. We have, however, examined this record separately and with great care, and have all reached a conclusion adverse to the appellants. The evidence is set forth in appellants' abstract largely by question and answer, and this results in a relatively large abstract. Ordinarily we would deem this method a breach of our rule. The evidence is such in this case, however, that it was quite pardonable in appellants to set it out in that way in order to present the case to us from their point of view. This necessity, however, serves to illustrate how slender is the thread upon which their case hangs. The deceased died of pneumonia after an illness of eight or ten days. The doctors visited him in the afternoon of his last day, and believed then that his case was hopeless. There is no claim of any mental breakdown as distinguished from a condition that was the immediate result of his disease.

The claim of mental incapacity is based upon the proximity of time of the making of the will to that of his approaching death. From the very nature of the case, therefore, the inquiry is narrowed down to his actual mental condition at the time the will was executed. The plaintiffs called Irwin, the scrivener, as a witness in their behalf. If his testimony is to be believed, it is quite fatal to them. They were permitted to examine him with all the freedom of cross-examination, and the attempt of such examination was to discredit his contention that he obtained from the deceased his information as to how the will was to be drawn. Their able arguments in this court are an attempted impeachment of the testimony of this witness. That the deceased was very weak and able to talk but little, and that he sank away into sleep and drowsiness when let alone, are all conceded. But it is undisputed that he did talk some, and that all that he said was rational. Great reliance is placed upon the testimony of the physicians. They visited the patient about three o'clock in the afternoon. He died at 10:45 that night. Their testimony was manifestly friendly to the appellants, and yet their testimony did disclose that at the time they last saw him he was rational, and was concerned about what they could do for him. One of the physicians expressed an opinion that he was dying at that time, but his explanation of what he meant by that quite destroyed its probative value, if not its admissibility. The statement was entirely theoretical on his part, his theory being that any sick man whose case was hopeless and whose death was approaching was necessarily dying. Mrs. Cudahy was an apparently friendly witness to the appellants. She and her husband came to the home of the deceased after the will had been drawn and after Irwin had left for home. Indeed, they met Irwin on the road as they were coming to the Murphy home. She testified that she went into the room, and that Mr. Murphy did not recognize her. But

she testified, also, that he did recognize her husband and spoke to him and shook hands with him, and asked him why he had not come to see him sooner, and that he then shut his eyes without seeing her, and that he never spoke again. Some stress is laid upon the fact that it was not shown on the part of defendants that the deceased was awake and conscious at the time that the witnesses signed the will. It is argued that, even though he had consciously set his name or mark to the will, it was yet essential that his consciousness should remain until after the witnesses had affixed their signatures. The witnesses did sign in the same room and in the presence of the testator. It may be conceded that the testimony does not affirmatively show that the deceased consciously saw the witnesses sign. But it should be borne in mind that the burden in this case is upon the plaintiffs. The will having been once duly admitted to probate, its due execution is presumed until the contrary be shown. Code, section 3296; *Smith v. Ryan*, 136 Iowa, 335.

Not only was the burden of attack upon the plaintiffs as to the due execution of the will, but as to the mental capacity of the testator also, and this is the great difficulty with the plaintiffs' case. If the burden were on the defendants affirmatively to show mental capacity, then it might well be argued by plaintiffs that such mental capacity had not been shown so conclusively as to justify a directed verdict in their favor. But lack of evidence on this question is not available to the plaintiffs to make an affirmative case. We think the most that can be said for the evidence on behalf of plaintiffs is that it casts doubt on the question of mental capacity, but leaves the question entirely in the realm of conjecture. We see nothing in the evidence from which a jury could affirmatively find mental incapacity. If it can fairly be said that there is some evidence, it is a mere scintilla, and the court would not be justified in permitting an adverse verdict to rest upon it.

The verdict was directed at the close of the evidence; both parties having rested. In our consideration of the case we have quite ignored the testimony introduced on behalf of defendants, and have directed our attention to that which could be deemed most favorable to the plaintiffs. Some rulings of evidence are presented for our consideration. In the view, however, which we take of the case as a whole, these become quite immaterial.

Our conclusion is that the order of the trial court must be *affirmed*.