WILLIAM W. NASON, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Appeal:** WHEN CONCLUSIVE ON A RETRIAL. Where the appellate court has once determined that there was not sufficient evidence to sustain a general verdict for plaintiff, as in this case, on the ground that his contract of settlement of a claim for damages was not binding because plaintiff was mentally incapable of making a valid agreement, the evidence of mental incompetency on a subsequent trial must be materially stronger to warrant a judgment for plaintiff on that ground.

**Same:** REVIEW OF EVIDENCE. Where the evidence of the same witnesses upon a second trial is materially modified the court is justified in carefully scrutinizing the same, when it is contended that the new evidence will support a verdict not justified on the first trial. And the court may refer to the record presented on the former appeal for the purpose of determining whether the testimony on the second trial is substantially different; and where there is no substantial difference the former conclusion will be adhered to as the law of the case.

**Personal injury:** DAMAGES: RELEASE: MENTAL INCOMPETENCY: EVIDENCE. Mere physical weakness which is not taken advantage of through fraud or undue influence in procuring a contract is not usually sufficient to avoid the same. There must be substantial evidence of mental derangement to set aside a contract otherwise fairly made.

In this action the evidence of plaintiff's mental condition is held insufficient to set aside a release of his claim for damages for a personal injury.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

FRIDAY, DECEMBER 16, 1910.

ACTION to recover damages for personal injuries received through the alleged negligence of the defendant while

plaintiff, as a mail clerk in the employ of the federal government, was riding in the mail car on defendant's train. There was a verdict for plaintiff, and from judgment thereon defendant appeals.—*Reversed.*

*Carroll Wright, J. L. Parrish,* and *Saunders & Stuart,* for appellant.

*Reed & Robertson,* for appellee.

McClain, J.—This case was before the court on a former appeal, and a judgment on the verdict in favor of plaintiff was reversed on the ground that there was no evidence to sustain a verdict for plaintiff, and that a directed verdict for the defendant should have been sustained on its motion. See 140 Iowa, 533. On the retrial following this reversal only one witness was examined who had not testified on the former trial. His testimony related to the mental condition of the plaintiff during a short period preceding the signing of the receipt and contract of release relied upon by defendant on the first trial. The court submitted the case to the jury on two grounds alleged by the plaintiff in avoidance of the effect of the release: First, alleged fraud on the part of the defendant in procuring such release; and, second, the alleged mental incompetency of the plaintiff to contract at the time the settlement was made. In answer to two special interrogatories submitted by the court, the jury found, first, that plaintiff was mentally incompetent to make such contract; and, second, that the contract was not void by reason of any fraud on the part of the defendant. As the plaintiff has not appealed, we have no occasion to consider the evidence relating to fraud, and, if that question were now before us, we would not do more than reiterate what was said in our opinion on the former appeal as to the insufficiency of the evidence

to establish a defense to the contract of settlement as it was then presented.

The sole question now to be considered has reference to the sufficiency of the evidence to support the verdict founded on the testimony, if any, that plaintiff at the time of entering into the contract of release in consideration of the receipt of $234 was mentally incapable of binding himself by such release. It is proper to bear in mind as of some significance in this connection that the amount paid plaintiff at the time of the execution of the release, although it was fixed as being the amount of plaintiff's salary for two months, during which he had been incapacitated, and as estimated by the parties would be incapacitated from carrying on his business as mail clerk, was not the amount of any salary which was owing or would be owing plaintiff from defendant, but as the parties then agreed was the amount which plaintiff would lose by reason of being incapacitated from rendering his service to the federal government in his employment as mail clerk, and that, when the settlement was made, plaintiff had already applied to the postoffice authorities for an allowance of this salary under an arrangement by which, in case of temporary incapacity, his compensation would be continued. It further appeared that for a period of thirteen months, including the two months time above referred to, plaintiff was allowed full salary by the postoffice authorities, so that the amount paid to him by the defendant was in fact over and above the compensation which he would have received had he continued the discharge of his employment as mail clerk without interruption or accident, and that, after the expiration of the period of thirteen months, he resumed the discharge of his duties as mail clerk, although as is now contended by his counsel he has not fully recovered from the results of his injuries, and is not fully capable of performing his regular duties.

1. APPEAL: when conclusive on a retrial.

On the former trial, one of the grounds interposed for avoiding the effect of the settlement was that plaintiff was mentally incapable of entering into a binding agreement, and the case was submitted to the jury in such way that, if the jury found plaintiff to have been wanting in sufficient mental capacity and judgment to make a valid contract, then the alleged settlement might be disregarded. The general verdict for the plaintiff on that trial might have been predicated on such a finding, and the question whether there was sufficient evidence to sustain the general verdict on that theory was before this court on the former appeal. As this court on that appeal found that there was not such evidence as to sustain the general verdict on any ground, and that the trial court should have set aside the verdict on defendant's motion, it is plain that this court did on the former appeal necessarily reach the conclusion that there was on the record then presented no such evidence of mental incapacity on plaintiff's part at the time of entering into the contract of settlement as to justify the jury in disregarding it. Therefore, unless the evidence of mental incapacity as presented in the present record is substantially different from and stronger than that found in the record of the first trial, the present verdict should not be allowed to stand.

It is proper to observe, also, that, after witnesses on one trial have testified to the facts relating to an issue presented on that trial, the court ought to feel some hesita-

2. SAME: review of evidence. tion in accepting from the same witnesses versions of the facts which are different from those given on the first trial, and which seem to be so given with a view to making a stronger showing in favor of the party for whom they are testifying. Of course, there may be omissions or oversights or mistakes which a witness on a second trial would be well justified in supplying or correcting, but, without some explanation, it is quite evident that material modifications in the testimony of

witnesses on a second trial had, as in this case, nearly two years after the testimony on the former trial was given should be rather carefully scrutinized when it is contended that the new evidence supports a verdict which the evidence on the first trial would not sustain. What is here said must not be interpreted as indicating that there was any testimony on the second trial on the part of witnesses testifying on the first trial, indicating an intentional misstatement of facts. But we feel that we are justified when counsel present in support of another verdict the testimony on this second trial of witnesses who previously testified on the same subject in comparing the testimony of the witnesses on the two trials in determining whether on the whole record the verdict should be sustained. Of course, we have not before us in this record the testimony of the witnesses on the former trial, but we have the record presented on the former appeal, and we may properly refer to it for the purpose of determining what was decided on that appeal with reference to the insufficiency of the evidence to sustain the verdict as to mental incapacity, and, if the record now presented does not show substantially other or different testimony than that presented on the former appeal, then we should adhere to the conclusion reached on that appeal for the very manifest reason that the conclusion reached on one appeal remains the law of the case on subsequent appeals. We ought not to sustain a verdict on this appeal on evidence which is in substance and effect, though in different form, that which was held insufficient to sustain a verdict as to the same issue on a former appeal.

On the last trial there were four witnesses whose testimony was relied upon as tending to show that the plaintiff was mentally incapacitated to make a binding contract when the agreement of settlement was entered into between him and the agent of the defendant. Three of these, the plaintiff, his wife, and Dr. Houghton, who on one occasion

prior to the settlement saw plaintiff and prescribed for him, testified on the former trial, while the fourth one, Ainsworth, who had known plaintiff for nearly twenty years testified only on the last trial.

Summarizing the testimony of each of these witnesses on the point of plaintiff's mental capacity at the time the settlement was made, it may fairly be said that the fol-

3. PERSONAL IN-
JURY: dam-
ages: release:
mental in-
competency:
evidence.

lowing embraces all that the evidence of these witnesses tended to show on this point. Plaintiff testified that during the six weeks intervening between the date of his injuries which consisted of various severe bruises about the head, body, and legs he had so far recovered as to walk about his yard, and that, at the doctor's direction, he had walked without assistance so far as one-half block on the street; that he still was dizzy on sitting down or when he got up, and that his wife assisted him in moving about the house; that he would have dizzy spells while walking; that he was unable to get on the average more than two or three hours' sleep out of the twenty-four hours; that, when the claim agent of defendant came to him for the purpose of making a settlement, he was at the dinner table drinking a cup of coffee; that his wife assisted him into another chair, and, after the claim agent had discussed the nature of his errand and the matter had been somewhat talked over in the presence of his wife, she helped him into another room, where he and the claim agent without the presence of the wife concluded the settlement, the receipt containing the terms of settlement being signed by him and the draft for the amount delivered to him which he endorsed to his wife authorizing her to expend the money. He further stated that at this time he was thinking a great deal about himself, being troubled because he had received no advices from Washington as to whether his claim for salary during the time his work was suspended had been allowed, and that he was unable to add

up columns of figures as he had been able to do before the accident. In answer to a question as to what his mental condition was upon the day on which the claim agent came to see him, he said that he could express it in only one way "and that would be out of work and no ·pay coming and disabled so that he could not earn a cent." He also said that his nerves were unstrung, that he was weak, and that the presence of the agent caused him considerable excitement. He further spoke of suffering severe pain in the head.

Plaintiff's wife testified that she had to assist her husband from place to place about the house; that, on the day of the settlement, he was nervous and his hands trembled, and he was weak physically and mentally; and that she told the claim agent that her husband was not fit to settle with him at that time, and that he did not know his condition. She also said that her husband had in conversation seemed to forget upon what subject he was talking and talked disconnectedly. It is significant, however, that the wife did not testify directly that plaintiff was mentally incapable of transacting business.

Dr. Houghton's testimony is somewhat ambiguous because, while testifying in chief, he assumed that he had visited the plaintiff several times prior to the settlement, while on cross examination, after refreshing his recollection, he admitted that he had seen him but once prior to that time, that occasion being a week prior to the making of the settlement, and on this cross examination he admitted that testimony that he had previously given in regard to plaintiff's nervous condition related to his condition nearly two months subsequent to the settlement, when symptoms of traumatic neurasthenia had appeared. The opinion which he had expressed in his direct examination that plaintiff was not competent at the time to transact business was based upon the facts which he had observed as follows: That plaintiff was unable to sleep and was

dizzy, that he was emaciated and had a haggard look in his face and was nervous, and that he seemed less ready than usual to engage in conversation, although his conversation did not appear to be particuarly disconnected. It is quite evident from the entire examination of the witness that his recollections as to development of nervous symptoms related to observations made after the settlement and that his opinion was based rather on these symptoms than on any recollection of plaintiff's mental condition prior to the settlement.

The witness Ainsworth, who testified for the first time on the second trial, said that he called at plaintiff's house four or five times between the date of the accident and the date of the settlement; that plaintiff complained of pain in his head and back; that his wife had to help him about the house; that plaintiff was very nervous and unable to carry on a connected conversation and was very weak; that his hands shook as though he had the palsy; that he appeared to be melancholy and downhearted; and that in witness' opinion, taking into consideration all the physical and mental conditions he had described, plaintiff was then of unsound mind, and not responsible for his actions.

Now, bearing in mind the fact that the burden rested upon plaintiff to show such mental incapacity that he was not bound by his settlement of his claim for damages against the defendant, we think that there is entire absence of any such evidence as would sustain the finding of the jury that plaintiff was mentally incompetent to make such a contract. There is no pretense that plaintiff was otherwise unsound of mind than that his mind was weakened by his physical suffering and nervous condition. Under such circumstances, the question of mental capacity to enter into an agreement or exercise judgment or discretion is dependent largely upon the nature of the act itself. Mere incapacity to add up a column

of figures, although prior to the accident plaintiff had been skillful in that respect, would not show incapacity to understand the nature and consequences of a settlement for an agreed sum of the damages suffered from a physical injury. It is not questioned that plaintiff believed when the settlement was made that he would be so far restored in health and strength as to resume his occupation after the lapse of a period of two months from the time when the injury was received, and the conclusion of the jury that no fraud was shown to have been perpetrated by defendant or its agents negatives the thought that this belief on plaintiff's part was entertained through any fault or misrepresentation of defendant's agents. It is to be borne in mind that the symptoms testified to by plaintiff's witnesses only indicated physical weakness and not mental derangement. Such weakness, not taken advantage of through fraud or undue influence, is not usually sufficient if it does not produce a state of unconsciousness to invalidate a contract or will. *Convey v. Murphy*, 146 Iowa, 154; *Casad v. Ripley*, 145 Iowa, 544; *Speer v. Speer*, 146 Iowa, 6. It is sufficient to say in conclusion that the evidence was not in any material respect stronger in support of the claim of mental incapacity than it was on the first trial, and that we therefore decline to reach a different conclusion at this time than that which was reached on the former appeal.

Other alleged errors are strongly pressed on our attention by counsel for appellant, but, as the conclusion above indicated must dispose of the case, we do not now feel justified in discussing them.

For the failure of the trial court to sustain defendant's motion to direct a verdict in defendant's favor on the ground of insufficiency of the evidence to support a verdict, the judgment must be, as it is, *reversed.*