(No. 15465.—Decree affirmed.)
CARRIE MAE CRAIG, Appellant, *vs.* NORA WISMAR *et al.*
Appellees.

*Opinion filed December 19, 1923.*

1. WILLS—*when fact that signature of attesting witness is re-traced does not invalidate will.* The fact that the signature of an attesting witness is retraced in ink over a previous signature is not such an alteration of the will as to invalidate it in a contest case, where there are no suspicious circumstances shown in the evidence.

2. SAME—*attesting witnesses need not sign at same time or in presence of each other.* It is not necessary that the attesting witnesses to a will sign in the presence of each other, and the attestation clause is good although the recital therein that they did sign in the presence of each other is contrary to the fact, as shown by a notation made on the will by the testatrix that she was unable to get the second witness until some time after the first signature.

3. SAME—*when affidavit of subscribing witness at probate can not be impeached by alleged admissions.* The testimony of a subscribing witness may be impeached, the same as the testimony of other witnesses, by showing contradictory statements made at another time, but the affidavit of a subscribing witness to prove the genuineness of her signature at the probate of the will cannot, after her death, be impeached in the circuit court by evidence of admissions of the witness.

APPEAL from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

ACTON, ACTON & SNYDER, and MANFORD SAVAGE, for appellant.

F. B. LEONARD, guardian *ad litem*, DOBBINS & DOBBINS, and W. W. REEVES, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

A bill was filed by appellant in the circuit court of Champaign county in December, 1921, to contest the will of Sarah Rice, deceased, which had been admitted to probate December 18, 1920, in the county court of that county.

On a hearing in the circuit court the bill was dismissed for want of equity, and this appeal follows.

The only question at issue here is whether the will was duly executed. The will states that it was signed and sealed "this .... day of September, A. D. 1919." Under the signature of the testatrix, Sarah Rice, was the attestation clause, bearing the names "C. D. Bundy, residing at Sadorus, Ill.," and "Nancy A. Allen, residing at Sadorus, Ill." Underneath the name of the last witness, in longhand, was written: "Owing to unavoidable circumstances couldn't get the witness until October 10, 1919.—Sarah Rice." The particular point in dispute is with reference to the signature of Nancy A. Allen as a subscribing witness. The original will has been certified to this court as an exhibit for the purpose of showing the signatures on the attestation clause. The signature of Nancy A. Allen as it appears on that attestation clause has been photographed and enlarged to four times the original size, and that photographed signature has been certified here. Several receipts and other papers which the proof shows bear the genuine signature of Nancy A. Allen have also been certified as exhibits for the purpose of comparison with the signature to the attestation clause above mentioned. Nancy A. Allen died subsequent to the probate of the will of Sarah Rice.

It appears from the testimony that Sarah Rice made a will in 1916 which was witnessed by Nancy A. Allen and three others. Both that will and the one in question were drawn by Lott R. Herrick, of Farmer City. The evidence shows that Mrs. Rice desired to change the will she had executed in 1916, and for that purpose met Herrick in Champaign on September 2, 1919, and gave him the data for the new will, which the attorney prepared and met Mrs. Rice at Champaign again on September 8, when he explained to her it would be necessary for her to execute it in the presence of two witnesses. He asked her if she wished to execute it in Champaign, and she said she would

prefer to take it home with her and would get witnesses there with whom she was acquainted, and the attorney explained the formalities which must be observed in executing the will.

Arthur Goers, cashier of the Farmers' State Bank at Sadorus, testified that Mrs. Rice had been to the bank and they turned over to her the old will and that he took her to Champaign on the occasion of the drafting of the new will, and that after the new will had been executed she turned it over to him, stating that she had taken the will to Dr. Bundy and had him sign as a witness and that she also had Mrs. Allen sign as a witness, and that she desired Goers to seal up the will and instructed him to turn it over to Mr. Wismar, who was named as sole executor and trustee, after her death. Goers testified that he sealed the envelope containing the will and put it in the bank vault, where it remained until Mrs. Rice's death, no one having access to the vault except the bank officials, and that after her death, when he inspected it, it was in the same condition as when sealed, and he then turned it over to Wismar. Goers also testified that he had seen Mrs. Allen sign her name numerous times and had seen her signature on checks, and in his opinion the signature on the attestation clause of the will in question was in her handwriting; that he had also talked with Mrs. Allen subsequent to Mrs. Rice's death, and she stated to him that the signature on the will (which was shown her) was her signature, and that she told him she sometimes after writing with a pencil retraced her signature in ink.

Dr. C. D. Bundy, the other attesting witness, testified that he signed the attestation clause in Mrs. Rice's presence; that Mrs. Allen was not present at that time but Mrs. Rice told him she was going to see Mrs. Allen; that he was familiar with the signature of Mrs. Allen and had seen her sign many times, and that in his opinion the signature on the attestation clause of the will was genuine.

Eleanor M. Compton, a daughter of the testatrix, testified that she was present in the county court when her mother's will was offered for probate, and that Nancy A. Allen was present and said that her signature was on the will and that she had signed the will at Mrs. Rice's request. Six other witnesses, among them a son of Mrs. Allen, testified that they knew Mrs. Allen's signature, and that in their opinion the signature on the attestation clause of the will was Mrs. Allen's genuine signature.

The affidavit to which Nancy A. Allen subscribed and which was submitted in the probate court was introduced in evidence, and was to the effect that she was a subscribing witness to the will in question and that the testatrix acknowledged the will to be her act and deed, and that she (Nancy A. Allen) signed the same as a witness in the presence of the testatrix. Marie F. Denton, deputy county clerk, testified that she read the affidavit last above mentioned to Mrs. Allen, who then signed it.

Appellant, Carrie Mae Craig, daughter of the testatrix, testified, over objection, that she had a conversation with Nancy A. Allen after the death of her mother in which Mrs. Allen said that she had signed but one will, and that when she testified in the county court she thought she was testifying about the will signed down in the country in 1916, and that then Mrs. Allen detailed to the witness the circumstances of such signing.

Hazel Craig, a daughter of the last witness, corroborated her mother and testified that they asked Mrs. Allen if she had ever signed a will and retraced her signature, and she said she had not, and that when she came to make her affidavit the last page of the will did not look like she remembered it when she signed as a witness; that she did not think Mrs. Rice's signature was in the same place as when she signed, and she knew there had been four witnesses; that Mrs. Allen stated that she said, "Where are the other witnesses?—the names of the other witnesses?" and

that they said there were only two; that the other two people had signed another piece of paper that was under it but did not sign the will, and that this was the will she signed; that Mrs. Allen said, "I didn't have my glasses with me and they said it was her will, so I said it was my signature."

A. M. Allen, the husband of Nancy A. Allen, testified that the two last named witnesses were at his home and talked with Mrs. Allen and had some conversation with her about signing a will; that he heard his wife say she had signed one will, and that was all he ever heard her say she did sign.

The foregoing is the substance of the material testimony offered. There was abundant evidence of various witnesses who had seen Mrs. Allen write, some of whom had been closely associated with her in lodge and school board work and in other matters, who gave it as their opinion that the handwriting on the will was that of Mrs. Allen, and the affidavit of Mrs. Allen was very strong evidence that she attested the will. An inspection of the signature, "Nancy A. Allen," as it appears on the will and from the enlarged photograph, indicates that it was once written in a fairly free hand and was afterward retraced in more pronounced lines with a deeper-colored ink and with more irregularity of outline and apparently in a more labored hand than the original signature. There is no direct evidence as to the retraced signature. As already stated, one witness testified that Mrs. Allen told him she sometimes did retrace her signature.

Appellant contends that there is no good explanation as to why there should be a retraced signature and that the signature may have been written by another person, and when taken in connection with the testimony offered on behalf of appellant that Mrs. Allen signed but one will and that one the will of 1916, sufficient suspicion is cast on the document to justify the court in refusing to probate it as

a valid will and to warrant the reversal of the circuit court's decree. Appellees argue that the signature underneath shows by inspection that it was a dim signature, apparently written in pale ink, and that a desire to preserve the signature from obliteration by further fading was a sufficient motive for retracing it, and that whether the retracing was done by Mrs. Allen, Mrs. Rice or by some other person is immaterial.

. The record shows clearly that the testatrix was fully informed by her attorney as to the statutory requirements for the due execution of the will and that she knew at the time she signed both wills that two witnesses were required, and that after the execution of each will she placed the will in the bank's vault to await the time of its becoming effective. From the testimony of the bank official it would appear that the will had not been tampered with, and from the circumstances it would appear there was little, if any, opportunity for anyone beside the testatrix to have access to the will before it was put away in the bank. We think the circumstances, both remote and immediate, interlace to confirm the claim that it was the intention of the testatrix to execute the will in question, and that the various facts, when properly interpreted, show that the attestation was by the witnesses Bundy and Mrs. Allen, even though the latter's signature has been retraced. We consider that the execution of the instrument has been sufficiently proved.

We cannot agree with counsel for appellant that there was such inherent improbability in the testimony as to justify the court in disregarding the evidence offered and holding that the signature of one attesting witness is spurious. When properly interpreted we think there are no suspicious circumstances shown. The record shows that the testatrix wished to change her will without having it known generally what the new provisions were. The attorney who drew the will testified that Mrs. Rice had told him that her daughter Mrs. Craig, the appellant here, had received con-

siderable financial help from Mr. Rice while he was alive and that she wanted to give her only $100 by the new will, and while the record does not show clearly what the old will gave to Mrs. Craig, it might be inferred from the fact the probate was opposed that the older will gave her more. There is no showing in the evidence that the provisions of the new will were not in harmony with a just and proper distribution of the property of the testatrix. We find no case in this State where it has been held that the retracing of the signature on a will in ink over a previous signature is such an alteration of the instrument as to invalidate it, but it has been held in other jurisdictions that the retracing of a previous signature is not an alteration of the instrument on which the signature appears. 2 Corpus Juris, 1220; *Reed* v. *Roark,* 65 Am. Dec. (14 Texas, 329,) 127; *Dunn* v. *Clements,* 52 N. C. 58; *Tutwiler* v. *Burns,* 160 Ala. 386.

It is not necessary that the attesting witnesses sign in the presence of each other. (*Rupp* v. *Jones,* 289 Ill. 596; *Jenkins* v. *White,* 298 id. 502.) Though there is a recital in the attestation clause that they did sign in the presence of each other and though that does not accord with the fact, it does not vitiate the force of the attestation clause. *Elston* v. *Montgomery,* 242 Ill. 348.

The only errors argued by the appellant are that the court erred in refusing to hold the propositions of law numbered 1, 2, 3 and 4 submitted by the appellant. The first three propositions are, that as a matter of law, under the evidence, the will was not attested by two witnesses; that the court finds from the evidence that Nancy A. Allen did not sign the purported will as a witness; and that the court finds that the equities of the cause are with the complainant, and that the purported will should be set aside because not witnessed by two witnesses. From what has already been said it appears that the first three propositions were properly refused. The fourth proposition is, that the

evidence as to admissions made by the attesting witness Nancy A. Allen, impeaching her affidavit filed in the county court, is competent evidence. The theory on which it is claimed that this evidence is competent is that it impeaches the statement of the witness contained in the certificate of her evidence given in the county court at the time of the probate of the will.

The testimony of the subscribing witness to a will may be impeached the same as the testimony of other witnesses by showing contradictory statements made at another time. (*Craig* v. *Trotter,* 252 Ill. 228.) In that case the impeachment proposed to be made was in the usual mode by calling the witness' attention to the contradictory statement and asking if he had made the statement. Where the witness to a will has died after having testified in the probate court on the presentation of the will for probate, there is a conflict of authority upon the question whether statements contradicting the testimony of the witness can be proved for the purpose of impeachment. In such case the death of the witness has made it impossible to interrogate him in regard to such statements. They have been held admissible without laying the usual foundation in the cases of *Harden* v. *Hays,* 9 Pa. St. 151, *Colvin* v. *Warford,* 20 Md. 357, *Abraham* v. *Wilkins,* 17 Ark. 292, *Townshend* v. *Townshend,* 9 Gill, 506, *Mobley* v. *Lyons,* 134 Ga. 125, and *Boylan* v. *Meeker,* 28 N. J. L. 274. In *Beaubein* v. *Cicotte,* 12 Mich. 459, the witness was living and testified, and was impeached in the usual manner. In *Losee* v. *Losee,* 2 Hill, 609, the impeachment of the deceased witness was by proof of his bad character. On the other hand, it has been held in the following cases that the death of the witness creates no exception to the general rule that where the witness has had no opportunity of explaining the supposed contradictory declarations and the party affected by them has had no opportunity of examining him in reference to them, this mode of impeachment cannot be resorted to: *Stobart* v. *Dryden,*

1 M. & W. 615; *Runyon* v. *Price,* 15 Ohio St. 1; *United States* v. *Boyd,* 8 App. (D. C.) 440; *Krenshaw* v. *Johnson,* 120 N. C. 270; *Sellars* v. *Sellars,* 2 Heisk. 430; *Rose* v. *Cuyler,* 27 U. C. Q. B. 270. In the case of *Runyon* v. *Price, supra,* it is said : "The true principle of the rule seems to be, as was declared by Comstock, J., in *Stacey* v. *Graham,* that the witness whose testimony is to be impeached and the party to be affected thereby are entitled, of right, to any explanation which the former can give of the statements imputed to him, and it seems to us that to allow the death of the witness to work an exception would be to destroy the principle on which the rule rests and deny the protection which it was designed to afford. The party impeaching the witness would have an equivalent for loss of his power of cross-examination, and, as remarked by Parke, B., in *Stobart* v. *Dryden,* the party supporting him would have none for the loss of his power of re-examination and explanation. In relieving one party of a supposed hardship an equally serious one might be inflicted on the other." The principle is approved in 1 Greenleaf on Evidence, (15th ed.) sec. 126, and is sustained, in effect, by various other decisions. These cases are more in consonance with the principle of the rule governing the impeachment of witnesses by proof of contradictory statements, and the court did not err in refusing to hold the proposition that the evidence of admissions made by the attesting witness inconsistent with her affidavit in the county court was competent evidence.

We think the trial court was justified in finding that the signature "Nancy A. Allen," on the attestation clause in Sarah Rice's second will, was genuine, and that the statute was complied with in the execution of the will and that the instrument was properly admitted to probate.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*