CLINTON HOOVER et al., Appellants, v. ROSE HOOVER et al., Appellees.

No. 46971.

FEBRUARY 11, 1947.

Welch & Welch, of Logan, for appellants.

Bennett Cullison and James J. Jennings, both of Harlan, for appellees.

MULRONEY, J.—E. A. Hoover, a bachelor, died on February 15, 1945. His will left $1 to his brother Clinton, a parcel of realty to his brother Ross, and the bulk of his estate to his brother I. E. Hoover and the latter's children and grandchildren. The will nominated J. Ray Pexton and Paul Rettig as executors and James J. Jennings as their attorney. The will was executed on February 8, 1943, and a codicil to the will, bearing date of February 16, 1943, was attached thereto. The codicil made certain specific bequests to a son and grandchildren of I. E.

Hoover. The will and codicil were admitted to probate by the clerk of Shelby county, after one notice, as the last will and testament of E. A. Hoover. Thereafter, on March 13, 1945, Clinton Hoover and his brother Ross filed their petition seeking to set aside the probate of the will. The defendants, the other beneficiaries under the will, made general denial and it is stated in plaintiffs' brief that:

"The issues in the case were that the last will and testament thereto were (a) not executed with the formality required by law; (b) that E. A. Hoover was of unsound mind; (c) that he was unduly influenced and the papers were not his last will and testament; (d) that if he did sign the will, which consisted of several typewritten sheets of paper, that certain sheets were substituted therein which were not a part of the instrument when he signed it; and (e) that his signature to the codicil was a forgery."

At the conclusion of the testimony the trial court sustained the defendants' motion for directed verdict and plaintiffs appeal, alleging various errors.

I. Plaintiffs' argument as to the first assignment of error is largely based on the clerk's failure to spread the order admitting the will to probate on the probate record book and the insufficiency of the published notice of probate. Plaintiffs recognize the rule of Smith v. Ryan, 136 Iowa 335, 112 N. W. 8, and Convey v. Murphy, 146 Iowa 154, 124 N. W. 1073, to the effect that once a will has been duly admitted to probate its due execution is presumed until the contrary is shown, but they feel these cases should be overruled. The pronouncements in those cases merely express the statutory rule (section 633.38, Code, 1946) providing that "such probate shall be conclusive as to the due execution thereof, until set aside by an original or appellate proceeding."

But plaintiffs argue that they did not have the burden here because the will was not duly probated in that the order admitting the will to probate was not spread on the probate record. Section 633.23 of the 1946 Code provides:

"A will, when admitted to probate, shall have a certificate

of such fact indorsed thereon or annexed thereto, signed by the clerk and attested by the seal of the court; and, when so certified, it or the record thereof, or the transcript of such record properly authenticated, may be read in evidence in all courts without further proof.''

It is undisputed that the will had the certificate of probate, executed by the clerk of Shelby county, attached to it.

Section 633.24 provides:

''After being proved and allowed, the will, together with the certificate hereinbefore required, shall be recorded in a book kept for that purpose, and the clerk shall cause the same, or an authenticated copy thereof, to be placed in the hands of the executor therein named or otherwise appointed.''

Section 632.11 provides the clerk shall keep a probate record to contain ''full and complete journal entries of all orders or other proceedings had in probate matters'' and, where real estate is sold or mortgaged, ''a complete record of the same.''

The clerk testified that he ordered the will to be probated on the 19th of February 1945, after one publication. He stated:

''I did not spread the order fixing the time of the probate and prescribe the notice on the permanent record book of this Court. The next entry in this case is under date of February 24, 1945, and it reads that the will was duly admitted to probate and that letters testamentary were issued to J. Ray Pexton and Paul Rettig. I have not yet spread the order of February 24, 1945, admitting the will to probate on the permanent record of this Court. Neither have I spread the order on the permanent record in the probate record book of the issuance of letters testamentary.''

Plaintiffs cite Rule 227, Iowa Rules of Civil Procedure, and decisions where we have held it is essential to the validity of a judgment that it be entered in the record book. The Rule and decisions are not in point. The statutory requirement of ''journal entries of all orders or other proceedings'' is satisfied by entries that fairly show what the clerk did. Such a requirement does not command a complete record. The word ''journal''

means "a diary; an account of daily transactions and events," and in the field of bookkeeping, a "daybook." Webster's New International Dictionary, Second Edition. See, also, 23 Words and Phrases, Perm. Ed., 123.

II. Plaintiffs argue the will was not duly probated because the clerk's notice of the time fixed for probate did not refer to the codicil. It stated the "last will and testament" would come before the court for final proof and probate. Section 633.20, Code, 1946, prescribing the notice for probate of a will, does not mention codicils but the term "will" includes codicils. Blackford v. Anderson, 226 Iowa 1138, 286 N. W. 735; Newhall v. Newhall, 280 Ill. 199, 117 N. E. 476; In re Grattan's Estate, 157 Kan. 116, 138 P. 2d 497; Loveren v. Eaton, 80 N. H. 62, 113 A. 206; 45 Words & Phrases, Perm. Ed., 171. In the Blackford case, supra, 226 Iowa 1138, 1151, 286 N. W. 735, 743, we said:

"In the language of this court, the second codicil became 'welded in the will' and first codicil, and 'an integral part thereof', and 'the will and the codicils are to be read together as one instrument.' In re Estate of Thomas, 220 Iowa 50, 54, 261 N. W. 622, 624; In re Estate of Flannery, 221 Iowa 265, 271, 264 N. W. 68; Bennett v. Primer, 191 Iowa 1233, 184 N. W. 392."

We hold the notice was sufficient.

III. Plaintiffs assert error in the trial court's finding that the clerk did not abuse his discretion when he ordered the notice of the probate of the will to be published on February 22d for probate proceedings on February 24th. The trial court made no specific finding in this regard. Plaintiffs' argument seems to assume such a finding is embodied in the court's ruling directing the verdict. Under the plain wording of the statute (section 633.20, Code, 1946) it is provided that published notice for three weeks shall be made or the "clerk, in his discretion, may prescribe a different notice." In re Will of McKinstry, 204 Iowa 487, 215 N. W. 497.

Plaintiffs make reference to the evidence of Ross Hoover, who testified he talked with Attorney Jennings, who was named as the attorney for executors in the will, and the latter told

him, on Saturday morning, February 24th, that the will was to be probated February 26th. Plaintiffs' entire argument as to the trial court's abusing its discretion in ordering a single notice is answered by section 632.1 and section 632.3, Code, 1946. Under the former statute the clerk is given court powers and jurisdiction in the matter of "The admission to probate of wills of decedents, when not contested, and the making of necessary orders in relation thereto * * *''; and under the latter statute any person aggrieved by any order of the clerk under the above powers "may have the same reviewed in court, on motion filed at the next term and not afterwards, unless upon good cause shown within one year, and upon such notice as the court or a judge thereof may prescribe.''

Plaintiffs cannot in this law action to set aside the probate of the will gain a review of the discretionary act of the clerk in making the order for a single publication when the statutes provide an ample remedy by motion for review in the court below.

IV. Plaintiffs complain of the court's failure to submit the question of due execution of the will because of the evidence of Ross Hoover, who testified one of the subscribing witnesses, Paul Rettig, told him decedent was not present when he signed as a witness to the will. The objection that this evidence was hearsay was overruled. The parties do not argue and we need not decide whether the objection should have been sustained or not. In Craig v. Wismar, 310 Ill. 262, 141 N. E. 766, it was held that evidence as to admissions, made by a deceased subscribing witness, impeaching her attestation, was incompetent. The opinion discusses the conflict in authorities that exists with respect to the admission of such contradicting statements by an absent or deceased subscribing witness. See, also, 68 C. J. 1001, section 769. The record here does not show that Rettig was unavailable, but in any event, the evidence was only admissible as impeaching testimony. To gain admission of such testimony, plaintiffs would have to argue the proponents constructively produced Paul Rettig and the legal effect is as if he testified to the due execution of the will. Assume plaintiffs would have the right to impeach the constructive testimony of

the subscribing witness by showing a contradictory statement. It is still impeaching testimony and as such, "It is ineffective as affirmative proof of the facts related in the statement." State v. Powell, 237 Iowa 1227, 1246, 24 N. W. 2d 769, 780. See, also, In re Relph's Estate, 192 Cal. 451, 221 P. 361; 68 C. J. 1001, section 769; 28 R. C. L. 633, section 219. No issue of fact was created by the testimony.

V. Plaintiffs assert the court erred in failing to submit the question of due execution, because of the evidence of the handwriting expert, who testified the purported signature of E. A. Hoover on the codicil was not affixed thereto by E. A. Hoover. We have held that where the testimony of an expert witness on handwriting stands alone, and there are no extraneous facts or circumstances tending to support his opinion, the trial court should direct the verdict where there is direct and positive testimony of the subscribing witnesses who saw the testatrix sign the will in question. See Buttman v. Christy, 197 Iowa 661, 198 N. W. 314. In the instant case the will was a proven or probated instrument. The attestation clause and signatures of the subscribing witnesses refute the handwriting expert's opinion. There are no facts or circumstances that tend to corroborate the expert. Other evidence produced by plaintiffs seems to oppose the expert testimony. The plaintiffs called Attorney Jennings to the witness stand and he testified the codicil was drawn and completed in his office on January 14th and he stapled the codicil in the folder, on top of the will, and kept both instruments in his safe until after decedent's death, when he filed the will and codicil in the clerk's office. We have studied the handwriting expert's testimony. We will not review the testimony for there are other considerations that support the trial court's ruling.

The defendants point out in answer to plaintiffs' argument that the provisions of the codicil do not diminish the interest of either plaintiff. The argument is that since the codicil merely disposed of five hundred fifty dollars and a gold watch amongst a nephew, two grandnephews, and a grandniece, the objectors had no contestable interest in the codicil. Plaintiffs filed no reply to this argument and it is true that it is not

shown by plaintiffs that they have a contestable interest in the codicil. We have held that where heirs at law take under a will the same share of testator's property they would obtain under the law they have no contestable interest under the terms of the will. In re Will of Adkins, 179 Iowa 1025, 162 N. W. 193. See, also, 68 C. J. 902, section 631. There is one clause of the will, however, which provides, in case the testator leaves insufficient money or personal property, that debts, claims, charges, bequests, and legacies shall be paid from the sale of real estate, part of which, in another paragraph of the will, was specifically devised to Ross Hoover. The total of the money bequests in the will and codicil is $1,251. The inventory in the estate shows $6,436.79 in cash and bank deposits, war bonds, and postal-savings certificates. Of course, the bequest to Clinton of $1 under the admittedly genuine will cannot be affected by the codicil. Unless the debts, which are not shown, exhaust the cash and credits, the realty devised to Ross will not be resorted to. Without some showing that the additional bequests in the codicil diminished or were likely to diminish Ross's interest in the estate, we hold they had no contestable interest in the codicil. In In re Will of Fallon, 107 Iowa 120, 122, 77 N. W. 575, we held a "remote, contingent interest, which, under certain conditions which may never exist * * * [was] not such an interest as authorizes her [widow] to contest the will."

VI. The handwriting expert also testified that in his opinion pages 2 and 3 of the four-page will were written at a different time than page 4 of the will containing decedent's signature. He stated the pages were all typed on the same typewriter but the inking on the last page was lighter and the left-hand margin was closer to the edge on the last page. There is nothing in the instrument itself suggesting any lack of continuity. On cross-examination he admitted the margin difference could be "the difference in the way the operator * * * inserted * * * the sheets of paper." His conclusion that the pages were substitutes was based on his idea of what he described as the "force of habit" of an operator to measure about the same distance each time in placing a page in the typewriter, plus his observation that the inking was lighter on the last page, which, he stated, was "something you just observe by looking

at the sheets." Plaintiffs argue this testimony warranted submission to the jury on the issue of substitution of pages.

In general it can be stated that a person who is skilled in handwriting and the inspection of documents may state his inference from appearances observed by him but, as stated in 32 C. J. S. 323, 329, section 546:

"It is a condition of the admissibility of this class of evidence that the jury should not be equally able to draw the inferences properly for themselves * * *."

While some of the testimony was not objected to, it was all without any probative value, for the court and jury would be equally able to look at the document and draw proper inferences from such observation. The inference of the expert, based on his idea of the "force of habit" of a typist and his detection of ink shading in the various sheets of the will, would be of no value to the jury with the will before it. The original will has been certified to this court. Plaintiffs do not argue that the appearance of the will, which they introduced in evidence, supports an inference that pages have been substituted. As stated, there is no lack of continuity and one looking at the instrument (and the expert's opinion is based on what he observed "by just looking at the sheets") would find it difficult, if not impossible, to detect the slightest difference in ink shade on the various typewritten sheets. Plaintiffs' argument is that the expert's opinion evidence generated a jury question. The argument is without merit. The evidence was inadmissible and where admitted without objection it was of no value to a jury capable of drawing correct conclusions from "just looking at the sheets."

■ VII. Plaintiffs argue that the expert's testimony to the effect that pages 2 and 3 of the will contained one more perforation than page 4 raised a jury issue on the question of the substitution of pages. All of the testimony with respect to the perforations is in complete confusion. There is testimony that originally the will did not contain the blue cover; that the cover was later stapled to the will; that the cover was taken off and the codicil inserted underneath the flap and on top of the will and the cover was again stapled to the instrument;

and that the whole instrument was again torn apart and the various pages photographed and it was then put back together. The expert said he saw but one perforation on the right side of page 4 of the will and two perforations on the right side of the other sheets, and later he said there were two perforations on page 4. Of course, his inference based upon what was as readily observable to the court or jury is as valueless as the evidence discussed in the preceding division. The trial court was right in holding the expert testimony with respect to perforations produced no jury issue. Plaintiffs' own witness, Attorney Jennings, testified that after he stapled the will and codicil together they remained in his safe until he brought them to the clerk's office after decedent's death.

VIII. There is no need to summarize the testimony upon which Ross Hoover and his wife based their opinion that decedent was of unsound mind. The witnesses gave no recital of facts sufficient to warrant a foundation for the giving of non-expert opinion as to whether the decedent was of sound or unsound mind. In re Will of Diver, 214 Iowa 497, 240 N. W. 622; Campfield v. Rutt, 211 Iowa 1077, 235 N. W. 59. Plaintiffs' entire argument on this issue consists of a five-line paragraph discussing our opinion in Brogan v. Lynch, 204 Iowa 260, 214 N. W. 514. The opinion is not applicable.

The same can be said of the issue of undue influence, of which brief mention is made in plaintiffs' brief, with the Brogan case cited as solitary authority.

Finding no error, the cause is affirmed.—Affirmed.

All JUSTICES concur.